HEALTHPOINT, LTD., Plaintiff,

v.

STRATUS PHARMACEUTICALS, INC., Defendant.

Stratus Pharmaceuticals, Inc., Counterclaim Plaintiff,

v.

Healthpoint, Ltd., Counterclaim Defendant.

No. SA–00–CA–726–PM.

United States District Court, W.D. Texas, San Antonio Division.

Nov. 29, 2001.

---

Charles W. Hanor, Gunn. Lee & Hanor, P.C., San Antonio, TX, C. David Kinder, Kirt S. O'Neill, Saul H. Perloff, Akin, Gump, Strauss, Hauer & Feld, San Antonio, TX, Eric W. Cernyar, San Antonio, TX, for Healthpoint, Inc.

Lisa A. Vance, Thomas Allen Rasmussen, Law Offices of Lisa Vance, San Antonio, TX, Dawn Ferrell Clements, San Antonio, TX, Jacqueline M. Stroh, Crofts & Callaway, P.C., San Antonio, TX, Steven M. Davis, Becker & Poliakoff, P.A., Miami, FL, for Stratus Pharmaceuticals, Inc.

## *ORDER*

MATHY, United States Magistrate Judge.

Pursuant to the consent of the parties to disposition before a United States Magistrate Judge [1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(c) and rule 1(i) of the Local Rules for the Assignment of Duties to United States Magistrates, effective January 1, 1994, in the Western District of Texas, the following Order is entered regarding Healthpoint's renewed motion for partial dismissal.

---

1. Docket nos. 13, 20 and 22.

## I. *JURISDICTION*

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367 and 15 U.S.C. §§ 1116 and 1121.

## II. *PROCEDURAL HISTORY*

This case began on or about July 28, 2000 when Healthpoint filed its original complaint seeking damages and preliminary and permanent injunctive relief against Stratus for unfair competition, dilution, and false advertising in violation of the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, and for unfair competition, palming off, false advertising, misappropriation and dilution under Texas law in connection, generally, with Stratus' promotion of its wound debridement products, Kovia and Ziox which were "reverse-engineered" from and compete with Healthpoint's products, Accuzyme and Panafil White.[2] Healthpoint's third amended complaint, its "live" pleading in this case, alleges eight causes of action.[3] Five of the causes of action allege: federal false designation of origin, false description and false representations of fact in violation of § 1125(a)(1)(B) of the Lanham Act; common law false advertising; federal unfair competition in violation of § 1125(a) of the Lanham Act; common law unfair competi-

tion; common law palming off. These causes of action are based on false representations that: Kovia and Ziox are "generic" to Accuzyme and Panafil; Kovia and Ziox can be substituted for prescriptions of Accuzyme and Panafil; Kovia and Ziox "deliver the same amount of active ingredient in the same time frame and have the same quality, strength, purity and stability as Healthpoint's debridement agents;" Kovia and Ziox "have undergone clinical testing to confirm that it is equivalent to" Healthpoint's two ointments; and Kovia contains "papain in sufficient quantities to debride" when not all of Kovia contains papain and some of Kovia contains "little or no papain." Additional causes of action allege: misappropriation "of Healthpoint's reputation and good will;" tortious interference "with the business of Healthpoint;" and civil conspiracy "to wrongfully and unfairly misappropriate Healthpoint's goodwill and business."[4] Healthpoint demands a jury and requests, on certain of its claims as specified damages, an accounting of profits, treble damages, punitive damages, a recall of Stratus' debridement products, attorney's fees, costs, prejudgment interest, and permanent and preliminary injunctive relief.[5]

On January 31, 2001, after initially contesting the Court's personal jurisdiction, Stratus consented to personal jurisdiction[6]

---

**2.** Docket no. 1. On October 4, 2000, Healthpoint filed its first amended complaint, adding additional factual allegations related to personal jurisdiction (docket no. 11). On November 7, 2000, Healthpoint filed a substituted first amended complaint (docket no. 23) and on March 5, 2001, Healthpoint filed a second amended complaint (docket no. 91).

**3.** Docket no. 152.

**4.** Docket no. 152.

**5.** Docket no. 152.

**6.** On September 11, 2000, Stratus filed a preanswer motion to dismiss for lack of personal

jurisdiction, to quash service and, alternatively, a motion for summary judgment arguing that Healthpoint had failed to allege facts sufficient to show that defendant had adequate minimum contacts to support jurisdiction in Texas or that the Court could assert specific of general jurisdiction over defendant (docket no. 5). The filing of this motion, as reflected by the record, ended merits-related discovery in this case, *see* docket nos. 37 and 49, as well as further consideration of Healthpoint's requested preliminary injunctive relief until January 31, 2001 when Stratus consented to the jurisdiction of the Court (docket no. 68) and, on that same day, filed a cross motion for preliminary injunction (docket no. 70).

and, on the same day, filed a counterclaim.[7] On May 21, 2001, Stratus filed an amended counterclaim, its "live" counterclaim, alleging five causes of action: false advertising in violation of § 1125(a) of the Lanham Act in connection with allegedly false statements which Healthpoint made about Kovia that Kovia is "not an alternative" to Accuzyme, that Kovia is "inferior" and is "not safe," that "under federal law manufacturers must seek approval to market a generic drug by submitting data demonstrating that one drug product is therapeutically equivalent to the other," and that "the amount of papain in Kovia is an inefficient and ineffective quantity;" both false advertising and unfair competition in violation of § 1125 of the Lanham Act in connection with the alleged misbranding of Accuzyme; and common law claims of unfair competition, injurious falsehood and interference with prospective business relationships.[8] Stratus requests damages, punitive damages, treble damages, an accounting of Healthpoint's profits, a recall of Healthpoint's debridement products, attorney's fees, costs, pre-judgment interest and preliminary and permanent injunctive relief on various of its claims.[9]

Both sides also filed motions for preliminary injunctive relief. Healthpoint filed its motion for preliminary injunction against Stratus on October 19, 2000,[10] as supplemented.[11] On November 14, 2000, Stratus filed its response and objection to the motion for preliminary injunction.[12] On January 31 2001, the same day on which it consented to personal jurisdiction, Stratus filed its cross motion for preliminary injunction and brief in support.[13] On April 18, 2001, after several unopposed extensions of time, Healthpoint filed its response to the motion for preliminary injunction.[14] On February 27, 2001, both Healthpoint's motion for preliminary injunction and Stratus' cross motion for preliminary injunction were set for a hearing to begin on May 7, 2001.[15] Beginning May 7, 2001 and ending on May 10, 2001, the Court held a consolidated evidentiary hearing on the cross motions for preliminary injunction. On June 4, 2001, the Court entered an Order which denied Stratus' motion for preliminary injunction and which granted in part Healthpoint's motion for preliminary injunction.[16]

On April 5, 2001, Healthpoint moved to dismiss certain of Stratus' claims and defenses.[17] On May 1, 2001, the Court de-

---

7. Docket no. 69. Healthpoint filed a timely answer to the counterclaim. Docket no. 78. On February 14, 2001, the Court entered an Order formally denying Stratus' pre-answer motion to dismiss. The docket sheets do not reflect that Stratus filed an answer, denominated as such, to the original complaint, first amended complaint or the substituted first amended complaint (the substituted first amended complaint was the "live" pleading as of the date on which the motion to dismiss was denied). The docket sheets reflect that Stratus filed an answer to the second amended complaint on March 19, 2001 (docket no. 96) and the third amended complaint on May 21, 2001 (docket no. 168).

8. Docket no. 169.

9. Docket no. 169.

10. Docket no. 17.

11. Docket no. 12. The supplement was filed before the motion and brief in support because of the pendency of a motion to file a brief in excess of the page limitations provided by the Local Rules (docket nos. 10 and 15).

12. Docket no. 34.

13. Docket nos. 70 and 73.

14. Docket no. 131.

15. Docket no. 88.

16. Docket no. 180.

17. Docket no. 109.

nied Healthpoint's motion for partial dismissal based on Stratus' representations that it was filing an amended answer and an amended counterclaim which would moot the motion.[18] On May 21, 2001, Stratus filed an answer to Healthpoint's third amended complaint[19] and filed an amended counterclaim.[20] In response to Stratus' amended counterclaim and its answer to the third amended complaint, on June 15, 2001, Healthpoint renewed its motion for partial dismissal[21] and incorporated by reference the arguments contained in its April 5, 2001 motion.[22] On July 10, 2001, Stratus filed its response to Healthpoint's renewed motion for partial dismissal.[23] On July 12, 2001, the Court entered an Order granting in part and denying in part Healthpoint's partial dismissal. The Court held that Healthpoint's motion for partial dismissal was granted in part and dismissed any claims or defenses based on allegations that: (a) Healthpoint mislabeled or misbranded Accuzyme or Panafil White; or violated the FDCA or Code of Federal Regulations in developing, causing to be manufactured or marketing Accuzyme or Panafil White; or (b) Accuzyme or Panafil White are illegally marketed.[24]

### 1. Healthpoint's Motion for Summary Judgment on Stratus' Counterclaims

On September 27, 2001, Healthpoint filed a motion for summary judgment, arguing generally that Stratus has no evidence to establish elements of its counterclaims.[25] Specifically, Healthpoint argues that: (1) to the extent Stratus is alleging a mislabeling claim, that claim is moot pursuant to the July 12, 2001 Order dismissing Stratus' mislabeling and misbranding causes of action;[26] (2) to the extent that anything remains of Stratus' claims regarding Accuzyme's label: (a) there is no evidence that Accuzyme was relabeled "solely for anti-competitive purposes;"[27] (b) Stratus is judicially estopped from disputing that the papain and/or papain activity in Accuzyme and Kovia is different;[28] (c) there is no evidence that any consumer, including healthcare providers, failed to prescribe or substitute Kovia as an alternative for Accuzyme based on Accuzyme's label;[29] and (d) Healthpoint has no duty to label Accuzyme to facilitate the substitution of Kovia for Accuzyme.[30] Healthpoint also asserts entitlement to summary judgment based on claims that it made specific false statements to consumers because (1) Stratus can offer no evidence to prove that

---

18. Docket no. 150.

19. Docket no. 168.

20. Docket no. 169.

21. Docket no. 196.

22. *Id.* at 2–3; *see* docket no. 109.

23. Docket no. 228.

24. Docket no. 236 at 14.

25. Docket no. 296 at 3. Healthpoint states that Stratus has asserted four causes of action in its amended counterclaim and that each is based on false statements made by Healthpoint. *Id.* at 1. The Court notes the counterclaim contains five counts—false advertising, false advertising and unfair competition,

common law unfair competition, injurious falsehood, and interference with prospective business relationships. Docket no. 169. Nevertheless, Healthpoint has set forth the elements of only the false advertising claim and limits its arguments and authoritative citations to proof of those elements. Thus, the Court addresses only whether summary judgment is proper as to Stratus' false advertising claims.

26. *Id.*

27. *Id.* at 4.

28. *Id.* at 4–5.

29. *Id.* at 6.

30. *Id.*

Healthpoint made the alleged statements and (2) any statements made were true.[31] Healthpoint further asserts that Stratus has no evidence that it has been or is likely to be injured by any statements attributed to Healthpoint.[32]

On October 19, 2001, Stratus filed its response to Healthpoint's motion, arguing first that Stratus has not alleged a mislabeling or misbranding claim regarding Accuzyme.[33] Rather, Stratus argues, it is alleging that the labeling on Accuzyme constituted false advertising.[34] Stratus asserts that the labeling, Healthpoint's letters to pharmacists or practitioners or posted on the internet, and statements made by Healthpoint representatives are literally false or "untrue as a result of a failure to disclose material facts."[35] Stratus also argues that whether Healthpoint's marketing representatives made false statements about Kovia is contested, presenting a factual issue for trial, and that whether any statements allegedly made by Healthpoint are literally false or merely misleading is a matter for the trier of fact.[36] In addition, Stratus argues that because the alleged statements are literally false, consumer deception and harm are presumed.[37]

On November 2, 2001, Healthpoint filed a reply in support of its motion for summary judgment.[38] In sum, Healthpoint argues uncontroverted evidence shows that Healthpoint believed the original Accuzyme label was accurate and that Stratus is not entitled to a presumption on causation and injury on the labeling claim.[39] Healthpoint also argues that because Stratus has conceded the statement "Accuzyme has no AB rated therapeutic equivalent" is literally true, Stratus must prove consumers were actually deceived.[40] Healthpoint asserts that Stratus misconstrued information in a "Dear Pharmacist" letter and took out of context statements posted on the internet by Healthpoint about competitors' sales forces.[41] With regard to the statements allegedly made by a Healthpoint representative, Healthpoint argues there is no evidence of harm from the alleged statements.[42]

## 2. Healthpoint's Motion for Partial Summary Judgment On Its False Advertising Claim

On September 27, 2001, Healthpoint also filed a motion for partial summary judgment on Healthpoint's false advertising claim, requesting a judgment that Stratus is liable and the entry of an injunction barring Stratus from representing Kovia and Ziox as "generic equivalents" or "generics" of Accuzyme and Panafil.[43] Healthpoint argues that there are no genuine issues of material fact on the elements of its false advertising claim because: (a) it is "undisputed that Stratus has advertised Kovia and Ziox as being 'generics to Accuzyme ointment;'"[44] (b) "it is also undis-

31. *Id.* at 7–10.

32. *Id.* at 10.

33. Docket no. 306 at 3.

34. *Id.*

35. *Id.* at 3–8.

36. *Id.* at 7–8.

37. *Id.* at 8–9.

38. Docket no. 317.

39. *Id.* at 2–4.

40. *Id.* at 4.

41. *Id.* at 5.

42. *Id.* at 5–6.

43. Docket no. 297 at 8. Healthpoint states that only the issue of monetary damages will remain for the jury's determination. *Id.*

44. *Id.* at 3.

puted that Stratus' representations were literally false;"[45] (c) survey evidence conclusively shows that Stratus' comparative advertisements have the tendency to deceive;[46] (d) because Stratus' advertisements are literally false, materiality of the statements is not an issue or, alternatively, "inducing substitution is the primary purpose of the misrepresentations;"[47] (e) because Stratus' advertisements are literally false, harm is presumed;[48] and (f) Stratus' fifteen affirmative defenses lack merit.[49]

Stratus responded to Healthpoint's motion on October 19, 2001, arguing Healthpoint's factual allegations are unsupported by citation to record evidence and are in dispute.[50] Stratus also argues that: (1) whether any statements made by Stratus are literally false or misleading is a question for the jury; (2) there is no evidence of actual deception or confusion caused by any statements made by Stratus or if there was confusion, that Stratus caused it; (3) evidence Stratus' statements about its products are unsubstantiated is not sufficient to satisfy Healthpoint's burden as Healthpoint must also show the statements were false or misleading; (4) the definition of "generic" is a fact question for the jury; (5) whether the alleged representations are material is a fact issue; (6) there is no evidence that any of Stratus' alleged statements caused injury to Healthpoint.[51]

On October 31, 2001, Healthpoint filed a reply in support of its motion for summary judgment arguing, in sum, that the literal falseness of the claim that Kovia is generic to Accuzyme is uncontroverted and is not a jury question.[52] For the same reason, that literal falseness is uncontroverted, Healthpoint argues its survey is not necessary to the case.[53] Healthpoint also argues that any argument in Stratus' response related to whether Healthpoint could provide evidence of the amount of damages is irrelevant because Healthpoint is not seeking summary judgment on that issue.[54]

### 3. Stratus' Motion for Partial Summary Judgment on Healthpoint's Damages

On September 28, 2001, Stratus moved for partial summary judgment as to Healthpoint's damages.[55] Stratus argues that Healthpoint has failed to offer evidence of its damages, including claims for misappropriation of trademark and conspiracy.[56] Specifically, Stratus argues that because there is no evidence that Stratus' advertising is literally false, Healthpoint must establish actual consumer deception through direct evidence or through surveys, which it cannot.[57] To the extent Healthpoint relies on a survey, Stratus argues the survey fails to establish substantial consumer confusion.[58] Stratus further argues that Healthpoint has failed to produce evidence of lost profits or loss of goodwill or that Stratus' alleged acts were willful, wanton, malicious, or actually deceived consumers as to justify punitive damages and attorney's fees.[59]

On October 19, 2001, Healthpoint filed its response to Stratus' motion, arguing that Stratus' statements were literally false because: (a) by definition Kovia and

---

45. *Id.* at 4.

46. *Id.* at 5.

47. *Id.*

48. *Id.* at 6.

49. *Id.* at 6–8.

50. Docket no. 307 at 1–2.

51. *Id.* at 2–9.

52. Docket no. 315 at 2.

53. *Id.*

54. *Id.* at 4.

55. Docket no. 299.

56. *Id.* at 3.

57. *Id.* at 4–6.

58. *Id.* at 6–8.

59. *Id.* at 8–11.

Ziox are not generics for Accuzyme and Panafil; (b) the implicit message of Stratus' advertising is literally false; (c) Stratus' claims are unsubstantiated; (d) Healthpoint has no burden to perform tests on humans to prove the validity of Stratus' statements; and (e) there is evidence to prove that Kovia is not therapeutically equivalent to Accuzyme.[60] Because Stratus' advertising is literally false, Healthpoint argues it is entitled to presumptions of actual deception and of harm, including "market place damages, loss of goodwill, and costs for responding to the defendant's false advertising."[61] Alternatively, Healthpoint argues that its survey "supports an inference that Stratus' promotional activities are likely to cause mistake, confusion, or deception."[62] Healthpoint also argues that: (1) testimony from Stratus' president establishes deliberate intent to deceive consumers through advertising, and a recent press release shows continued intent to deceive consumers;[63] (2) it may be reasonably inferred from the lack of evidence showing that prescriptions were written for Kovia and Ziox that all Stratus' sales come from substitution of these products for Accuzyme or Panafil, resulting in lost sales for Healthpoint; and (3) Healthpoint has evidence of Stratus' profits from the sales and costs of advertising Kovia and Ziox.[64]

Healthpoint further argues that Stratus should not be allowed to benefit from its failure to provide discovery related to the distribution of its products and its financial data showing sales, costs, and profits.[65] In that regard, Healthpoint renews a previous request for sanctions[66] and asks the Court to enter an order deeming as established certain elements and evidence related to Healthpoint's damages.[67] Healthpoint has also filed another motion to compel production of Stratus' financial and sales documents,[68] which will be address in a separate order. Healthpoint asks that if the Court concludes Healthpoint's evidence is lacking, the Court delay its ruling on the motions for summary judgment pending

60. Docket no. 310 at 2–5.

61. *Id.* at 2, 9.

62. *Id.* at 6.

63. *Id.* at 7–8.

64. *Id.* at 7–14.

65. *Id.* at 14–21.

66. *Id.* at 21. Healthpoint previously filed a motion for contempt, requesting sanctions for discovery abuses. Docket no. 154 at 6. On July 11, 2001, the Court entered an Order granting the motion to the extent it could be construed as a motion to compel. Docket no. 230. In all other respects, the motion was denied and sanctions were not imposed.

67. Docket no. 310 at 21. Healthpoint seeks to have the following deemed established:
 a. the elements of actual confusion and causation of damages shall be taken to be established for the purposes of proving damages;
 b. it shall be taken as established that Stratus has sold each tube of Kovia and Ziox that it has manufactured;
 c. it shall be taken as established that Stratus' net profits are equivalent to the wholesale price of Kovia ($29.75) multiplied by the number of tubes of Kovia that have been manufactured, plus the wholesale price of Ziox ($39.95) multiplied by the number of tubes of Ziox that have been manufactured, less the $1.85 wholesale cost per tube to produce them, less $2270.19 spent to product promotional BIC pens and Sport Bottles;
 d. it shall be taken as established that each sale of Kovia and Ziox was as a result of Stratus' false comparative advertisements; and
 e. it shall be taken as established that each sale of Kovia and Ziox came at the expense of the sale of Accuzyme and Panafil.

68. Docket no. 304.

the disposition of the motion to compel and possible additional discovery.[69]

On October 30, 2001, Stratus filed a reply reiterating and clarifying its summary judgment arguments.[70] In addition, Stratus contends that Healthpoint's response did not address Stratus' summary judgment arguments by providing some evidence to support Healthpoint's claims, such as evidence showing that: (1) Stratus' use of the term "generic" was false or misleading; (2) the products at issue are not therapeutically equivalent; or (3) anyone was deceived by Stratus' advertisements.[71] Stratus also argues that Healthpoint has confused chemical equivalence with therapeutic equivalence.[72] Stratus further argues that construing all of Stratus sales as "illegal substitution sales" would be improper because Healthpoint has acknowledged that some sales are made by Stratus' representatives and at conventions.[73] Finally, Stratus argues Healthpoint's failure to disclose allegations are attempts to shift the burden of proof unto Stratus and are frivolous.[74]

## IV. ISSUES

1. Whether Healthpoint is entitled to summary judgment on Stratus' counterclaims.

2. Whether Healthpoint is entitled to summary judgment on its false advertising claim.

3. Whether Stratus is entitled to summary judgment as to Healthpoint's damages.

## V. STANDARDS

### A. Summary Judgment

The standard to be applied in deciding a motion for summary judgment is set forth in Federal Rule of Civil Procedure 56, which provides in pertinent part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[75]

The summary judgment movant bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[76] The movant must establish that if the evidence of record "were reduced to admissible evidence in court," the evidence would be insufficient to allow the opposing party to carry its burden.[77]

If the movant satisfies this burden, then the nonmovant "must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations or denials of its pleadings."[78] Rule 56 re-

---

69. Docket no. 310 at 21–22.

70. Docket no. 312.

71. *Id.* at 1–3.

72. *Id.* at 3–4.

73. *Id.* at 5.

74. *Id.* at 5–6.

75. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

76. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553.

77. *Id.* at 327, 106 S.Ct. at 2555; *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir.), *cert denied*, 531 U.S. 871, 121 S.Ct. 171, 148 L.Ed.2d 117 (2000).

78. *Beck*, 204 F.3d at 633 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

quires that there be no genuine issue of material fact.[79] A fact is material if it might affect the outcome of the lawsuit under the governing law.[80] More than a "metaphysical doubt as to the material facts" is required.[81] A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[82] Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[83]

All evidence and inferences drawn from that evidence must be viewed in the light favorable to the party resisting the motion for summary judgment.[84] Thus, summary judgment motions permit the Court to resolve lawsuits without the necessity of trials if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[85]

### B. Lanham Act

 A plaintiff alleging a Lanham Act false advertising claim must establish the following elements:

(1) a false or misleading statement of fact about a product;

(2) a statement which actually deceived or had the capacity to deceive a substantial segment of potential consumers;

(3) a material deception in that it was likely to influence a consumer's purchasing decision;

(4) the product was in interstate commerce; and

(5) plaintiff had been or was likely to have been injured as a result of the statement in issue.[86]

Failure to establish any element is fatal to the plaintiff's claim.[87] When the statements of fact at issue are literally false, the plaintiff is not required to introduce evidence on the issue of the impact the statements had on consumers; the court will assume the statements actually misled consumers.[88] If the statements are misleading, but either ambiguous or literally true, there is no such presumption, and the plaintiff must present evidence of actual consumer deception.[89] When seeking only injunctive relief, the plaintiff must show that the statements have a tendency to deceive consumers by producing evidence that at least some consumers were confused.[90] When seeking to recover money

**79.** *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510.

**80.** *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Thomas v. LTV Corp.,* 39 F.3d 611, 616 (5th Cir.1994).

**81.** *Beck,* 204 F.3d at 633 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)).

**82.** *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995).

**83.** *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2509.

**84.** *Hibernia Nat'l Bank v. Carner,* 997 F.2d 94, 97 (5th Cir.1993).

**85.** *See Fields v. City of South Houston, Tex.,* 922 F.2d 1183, 1187 (5th Cir.1991).

**86.** *Pizza Hut, Inc. v. Papa John's Int'l, Inc.,* 227 F.3d 489, 495 (5th Cir.2000), *cert. denied,* 532 U.S. 920, 121 S.Ct. 1355, 149 L.Ed.2d 285 (2001); *Seven–Up Co. v. Coca–Cola Co.,* 86 F.3d 1379, 1383 n. 3 (5th Cir.1996); *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1500 (5th Cir.1990).

**87.** *Pizza Hut,* 227 F.3d at 495.

**88.** *Id.* at 497.

**89.** *Id.*

**90.** *Id.*

damages for a misleading advertisement that is not literally false, the plaintiff must prove actual deception.[91] This requires evidence that a substantial number of consumers were actually mislead by the advertisements.[92]

## VI. ARGUMENTS AND CONCLUSIONS OF LAW

### A. Healthpoint's Motion for Summary Judgment on Stratus' Counterclaims

#### 1. *Accuzyme's Label*

**Misbranding**

Healthpoint has moved for summary judgment on Stratus' counterclaims regarding the labeling of Accuzyme and misrepresentations to consumers allegedly disseminated by Healthpoint about Stratus' product Kovia. Turning first to the issue of Accuzyme's label, Healthpoint argues Stratus' claim that Accuzyme's label is misleading is really a misbranding or mislabeling claim. Such a claim, Healthpoint correctly argues, is moot pursuant to the Court's July 12, 2001 Order dismissing any claim that Accuzyme was mislabeled or misbranded because that claim is for the FDA to resolve. This issue need not be readdressed here. To the extent Stratus' pleading can be construed to assert a misbranding or mislabeling claim, Healthpoint is entitled to summary judgment.

**Unnecessary Change**

■ As stated in the July 12, 2001 Order, "[m]any of the allegations at issue, including those that refer to the representations made on the Accuzyme label, refer to proper factual statements in furtherance of a pleaded false advertising and unfair competition [claim] under the Lanham Act."[93] Thus, to the extent Stratus has remaining false advertising claims based on the Accuzyme label, Healthpoint argues[94] that it is entitled to summary judgment on Stratus' allegation that:

> Since this litigation began, and solely for anti-competitive reasons, Healthpoint changed its Accuzyme label to indicate a lower amount of active ingredient, but continues to market the product under the same National Drug Code ("NDC") number. The unnecessary label change reduced the chance that Kovia could be considered an alternative to Accuzyme, thereby resulting in lost sales for Kovia.[95]

Healthpoint argues that Stratus has no evidence that the label change was unnecessary or that it was taken for purely anti-competitive purposes.[96] Additionally, Healthpoint argues that the uncontroverted evidence shows that the label change was warranted by the "USP's repudiation of the F-lot as a valid standard" and that the label change was initiated before Healthpoint knew of potential competitors.[97] Although Stratus asserts Healthpoint advertised that Accuzyme had $1.1 \times 10^6$ USP units of papain when it knew for three years the information was false,[98] Stratus did not present evidence raising a genuine issue of material fact regarding whether the label change was unnecessary or was taken for purely anti-competitive purposes. Therefore, to the extent that Stratus' false advertising claims are premised on an allegation of an unnecessary label change to prevent the substitution of

**91.** *Id.*

**92.** *Id.*

**93.** Docket no. 236 at 12.

**94.** Docket no. 296 at 4.

**95.** Docket no. 169 at ¶ 13(a).

**96.** Docket no. 296 at 4.

**97.** *Id.*

**98.** Docket no. 306 at 3.

Kovia for Accuzyme, Healthpoint is entitled to summary judgment.

### Judicial Estoppel

■ Healthpoint contends Stratus is judicially estopped from arguing that "Healthpoint's new label is false and misleading in that it indicates that its Accuzyme product actually contains less papain than Kovia"[99] and from disputing that Kovia has a different amount of papain activity than Accuzyme.[100] Healthpoint argues Stratus "boasted" in the original counterclaim that Kovia is better because Accuzyme contains less papain and has stated in a memorandum supporting its motion for preliminary injunction that "Stratus' own tests show that Kovia has higher levels of papain activity, it is more effective and will perform more quickly than Accuzyme."[101] Healthpoint argues that "[h]aving previously boasted that Kovia has more papain activity than Accuzyme, Stratus cannot now urge that consumers are mistaken, misled, or deceived when they infer" from the label that Accuzyme contains less papain than Kovia.[102] Stratus did not respond to these arguments.

A fair reading of Stratus' original counterclaim reflects no boast that Kovia is better because Accuzyme has less papain. Moreover, Healthpoint does not argue that evidence which conclusively shows more papain activity necessarily means a product contains more papain. Therefore, based on the summary judgment record, Stratus is not judicially estopped from alleging that the new Accuzyme label falsely indicates the product has less papain than Kovia. However, Stratus will not be heard to dispute its allegation that testing shows Kovia has more papain activity than Accuzyme. Because Stratus is not precluded from asserting claims based on the allegation that Accuzyme's label falsely indicates less papain than in Kovia, the Court concludes Healthpoint is not entitled to summary judgment based on the doctrine of judicial estoppel.

### Duty to Label

■ Healthpoint further argues entitlement to summary judgment because it is under no duty to label Accuzyme to facilitate Stratus' attempts to "knock-off" Accuzyme.[103] Although it is not clear such a duty is asserted by the counterclaim and Stratus has not addressed this argument, to the extent the false advertising claim may be based on an allegation that Healthpoint owed a duty to Stratus to label Accuzyme to facilitate "knock-offs," Healthpoint is entitled to summary judgment. The only duties Healthpoint has in labeling its product are those prescribed by the FDA.

### Actual Consumer Deception

Healthpoint has also moved for summary judgment on the false advertising claim based on the Accuzyme label by arguing that Stratus has no evidence any consumers chose Accuzyme over Kovia or refused to substitute Kovia for Accuzyme because of Accuzyme's label.[104] Stratus does not controvert Healthpoint's argument, but argues instead that because Healthpoint's advertising was literally false, Stratus does not have to provide evidence of consumer impact.[105]

■ As set forth above, the Lanham Act standards provide two ways to prove con-

---

99. Docket no. 169 at ¶ 19.

100. Docket no. 296 at 4–5.

101. *Id.* (citing docket no. 69 at ¶ 19 and docket no. 73 at 10).

102. *Id.* at 5.

103. Docket no. 296 at 6.

104. Docket no. 296 at 6.

105. Docket no. 306 at 8.

sumer deception. If the advertising at issue is literally false, the court will presume that consumers were actually misled.[106] If the advertisements are misleading, but either ambiguous or literally true, there is no presumption, and the plaintiff must present evidence of actual consumer deception.[107] Whether an advertisement is false is generally a question for the fact finder.[108] Stratus has produced evidence that: Accuzyme was until recently labeled as having $1.1 \times 10^6$ USP units of papain;[109] Healthpoint may have known for approximately three years those units of papain were stated under a former USP standard;[110] papain under the F–3 and G standards has "quite different potencies;"[111] and the Accuzyme label was recently changed to reflect the current standard.[112] Because this evidence raises a genuine issue of material fact about whether Accuzyme's labeling was false, summary judgment is not proper on the issue of whether Accuzyme was falsely labeled. However, to the extent, Healthpoint's labeling of Accuzyme is found to be literally true or ambiguous but misleading, Stratus has not offered evidence to raise a general issue of material fact regarding actual consumer deception. Therefore, to the extent Stratus has alleged the labeling is misleading but either ambiguous or literally true, the Court concludes that Healthpoint is entitled to summary judgment.

### Causation and Injury

▇ Healthpoint argues that it is entitled to summary judgment on the false advertising claim because Stratus has no evidence "that Accuzyme's label is damaging."[113] Stratus contends that because the label is literally false, it is entitled to a presumption of injury.[114] In its reply, Healthpoint argues that even if the label is literally false, summary judgment is proper as there is no presumption of causation and injury in this case because the label was not a comparative advertisement and Stratus has offered "no proof that Healthpoint intended to mislead anyone."[115]

Stratus cited the Fifth Circuit decision in *Pizza Hut*[116] for the proposition that "damages are presumed" when advertising statements are literally false.[117] The Court does not agree *Pizza Hut* stands for this proposition.[118] Stratus cites no other

106. *Pizza Hut,* 227 F.3d at 497.

107. *Id.*

108. *See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 34 (1st Cir.2000); *see also S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232, 238–39 (2d Cir. 2001) (affirming district court's findings of literal falsity made at conclusion of bench trial).

109. Docket no. 306, exhibit A.

110. *Id.,* exhibit B.

111. *Id.,* exhibit B.

112. *Id.,* exhibit C.

113. Docket no. 296 at 6. Healthpoint has moved for summary judgment "[b]ecause Stratus has produced no evidence that Accuzyme's label is misleading, material, or damag-

ing ...." As noted, there is uncontested evidence that Accuzyme's label was incorrect and, therefore, misleading for a time. The Court is not inclined to hold that the list of ingredients in a prescription drug as printed on the product label is not material.

114. Docket no. 306 at 8–9.

115. Docket no. 317 at 3–4.

116. 227 F.3d at 489.

117. Docket no. 306 at 9.

118. The Fifth Circuit did not address in *Pizza Hut, Inc.* whether a presumption of causation and harm exists in cases of literally false advertising. *Cf. Logan v. Burgers Ozark Country Cured Hams, Inc.,* 263 F.3d 447, 465 (5th Cir.2001) (no discussion of presumption of causation and harm).

case that shows the Fifth Circuit applies a presumption of causation of injury and injury in fact in a case of alleged false advertising when noncomparative advertising is at issue. Healthpoint has cited cases from the Second, Eighth, and Tenth Circuits to support its argument that a presumption of causation of injury and injury in fact is appropriate only in comparative advertising situations.[119]

The few courts that have permitted a presumption of causation and injury in the false advertising context have limited the presumption to cases involving false or misleading comparative advertisements. In *Porous Media Corporation v. Pall Corporation*,[120] the Eighth Circuit found that the district court did not err in applying a presumption of causation and harm because there was proof the defendant had willfully deceived consumers in false or misleading advertisements comparing its product to the plaintiff's.[121] In *McNeilab, Inc. v. American Home Products Corporation*,[122] the Second Circuit affirmed the district court's finding that because defendant had falsely implied in advertising that Advil was as safe as Tylenol in all respects, plaintiff was entitled to a presumption of causation and harm.[123] The courts were willing to apply the presumption in part because "[a] misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer." [124]

On the other hand, when the defendant has falsely advertised its product but made no comparison with a competitor's product, the courts have refused to apply the presumption of causation and harm, even when the products were in obvious competition. This is so because the courts want to prevent a windfall for plaintiff from speculative damages [125] when, as framed by the Ninth Circuit,

> advertising does not directly compare defendant's and plaintiff's products, when numerous competitors participate in a market, or when the products are aimed at different market segments, injury to a particular competitor may be a small fraction of the defendant's sales, profits, or advertising expenses.[126]

**119.** Docket no. 317 at 3 (citing *Hutchinson v. Pfeil*, 211 F.3d 515 (10th Cir.2000) (finding plaintiff lacked standing under Lanham Act because plaintiff was not defendant's competitor and discussing but not applying presumption of causation and harm), *cert. denied*, 531 U.S. 959, 121 S.Ct. 384, 148 L.Ed.2d 296 (2000); *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329 (8th Cir.1997) (applying presumption where defendant willfully deceived consumer with false comparative advertising); *Ortho Pharmaceutical Corp. v. Cosprophar, Inc.*, 32 F.3d 690 (2d Cir.1994) (dismissing for lack of standing where parties were not obvious competitors and advertising was noncomparative)). The courts in *Hutchinson* and *Ortho* both stated the proposition that a presumption of causation and harm is limited to circumstances "when the defendant has explicitly compared its product to the plaintiff's or the plaintiff is an obvious competitor with respect to the misrepresented product." *Hutchinson*, 211 F.3d at 522; *Ortho Pharmaceutical*, 32 F.3d at 694. The court in *Porous*

*Media* cites *Ortho* but adds the element of willful deception before the presumption will apply in comparative advertising cases. *Porous Media*, 110 F.3d at 1335–36.

**120.** 110 F.3d 1329.

**121.** *Id.* at 1334, 1336.

**122.** 848 F.2d 34 (2d Cir.1988)

**123.** *Id.* at 38.

**124.** *Porous Media*, 110 F.3d at 1335; *McNeilab*, 848 F.2d at 38.

**125.** *Porous Media*, 110 F.3d at 1334; *see McNeilab*, 848 F.2d at 38 (discussing *Johnson & Johnson v. Carter–Wallace, Inc.*, 631 F.2d 186, 189–90 (2d Cir.1980)).

**126.** *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 n. 8 (9th Cir.1989).

In *Harper House, Inc. v. Thomas Nelson, Inc.*,[127] where the parties were competitors for organizer sales, the Ninth Circuit reversed the district court's denial of the defendant's motion for judgment notwithstanding the verdict because plaintiff had not presented evidence of harm caused by defendant's false non-comparative advertisements about its organizer.[128] In *Coca Cola Company v. Tropicana Products, Inc.*,[129] a case involving orange juice competitors, the Second Circuit reversed a denied preliminary injunction enjoining the broadcast of defendant's non-comparative advertisement about its own product, stating that causation and harm would not be presumed and discussing the type of evidence—market surveys—that showed some evidence of irreparable harm.[130]

■ Although it is undisputed that Stratus and Healthpoint are obviously competitors in the debridement product field[131] and Accuzyme and Kovia do compete for the same consumer dollar because Kovia exists to be substituted for Accuzyme, the advertising at issue, Accuzyme's label, is non-comparative. Therefore, even assuming Stratus is able to prove Accuzyme's label was literally false, because the Fifth Circuit has not held that a presumption of causation and harm is applicable to a product label and because other circuits have declined to apply the presumption in instances in which a direct competitor engages in false non-comparative advertising,

the Court is unwilling to conclude as a matter of law that a presumption of causation and injury is applicable to the facts of the case. Stratus has cited no case on point, particularly a case where the defendant's product label is alleged to be the false advertisement. Because Stratus may not rely on a presumption of causation and injury and has presented no evidence to raise a genuine issue of material fact on that element of its false advertising claim, Healthpoint is entitled to summary judgment on Stratus' false advertising claim based on Accuzyme's label.

### 2. *Letters and Statements*

■ Healthpoint asserts that it is entitled to summary judgment on Stratus' false advertising claims regarding statements in letters from Healthpoint or its representatives and statements allegedly made by Healthpoint representatives.[132] Healthpoint argues that summary judgment is proper because Stratus has no proof Healthpoint made some of the statements alleged and because any statements actually made were true.[133] With regard to the statements in Healthpoint's letters to pharmacists or practitioners that "[u]nder Federal law, manufacturers must seek approval to market a generic drug by submitting data demonstrating that one drug product is therapeutically equivalent to the other" and that "Accuzyme has no AB rated equivalent," Healthpoint argues these statements are true and cannot be controverted.[134]

---

127. 889 F.2d 197.

128. *Id.* at 209–210.

129. 690 F.2d 312 (2d Cir.1982).

130. *Id.* at 316–18. *See also Hutchinson*, 211 F.3d at 522 (in standing case, discussing but finding presumption of causation was not applicable because defendant had no product in competition with plaintiff's); *Ortho Pharmaceutical*, 32 F.3d at 694 (in standing case, considering but refusing to apply presumption when parties, a pharmaceutical company and

a cosmetics manufacturer, were not direct competitors and defendant's advertising made no direct reference to plaintiff's product).

131. *See Ortho Pharmaceutical*, 32 F.3d at 694.

132. *Id.* at 7–10.

133. *Id.*

134. Docket no. 296 at 7–9. The Court notes Healthpoint's reliance on language in the June 1, 2001 Order on the cross motions for preliminary injunction (docket no. 180). As

Stratus argues that letters from Healthpoint addressed to pharmacists or practitioners were "untrue as a matter of fact and untrue because of a failure to disclose material information."[135] In particular, Stratus complains of a statement in a June 26, 2000 letter from Healthpoint to pharmacists that "[i]f two drugs are not rated generically equivalent in the Orange Book, or are not listed in the Orange Book, substitution may not occur."[136] Stratus argues the statement is false because many states rely on their own formularies, which allow substitutions, and not on the Orange Book.[137] Stratus notes that the statement was modified in an undated letter to practitioners by adding the words "In those states" at the beginning of the sentence.[138]

Stratus also complains about the opening statement in both letters that "Accuzyme has no AB rated therapeutic equivalent."[139] Although conceding the statement itself is literally true, Stratus argues that Healthpoint's failure to disclose material information makes the statement untrue.[140] Specifically, Stratus cites Healthpoint's omission of information from its letters that:

1. Accuzyme and Panafil are not AB rated products.

2. Accuzyme and Panafil are not approved by the FDA.

3. No product can be AB rated to Accuzyme and Panafil.

4. Any product proven to be equivalent to Accuzyme or Panafil would be AT rated rather than AB rated.

5. The FDA has provided no mechanism for Accuzyme, Panafil, Kovia, or Ziox to obtain a rating.[141]

Stratus cites excerpts from the testimony of Michael Steadman, Healthpoint's Senior Vice President, indicating that the omissions, as alleged, may be accurate and suggesting Stratus' argument may have some merit.[142]

■ As discussed above, whether statements, such as those included in Healthpoint's letters, convey a false message is question for the fact finder.[143] "When construing the allegedly false or misleading statement to determine if it is actionable under [the Lanham Act], the statement must be viewed in light of the overall context in which it appears."[144] A failure to disclose facts is not generally actionable under the Lanham Act, but "it is equally true that a statement is actionable [under the Act] if it is *affirmatively misleading, partially incorrect, or untrue* as a result of a failure to disclose a material fact."[145] Although Stratus does not

Healthpoint quotes, the Court said that the statements *appeared* to be literally true. However, the Court's statement should not be construed beyond the purpose for which it was made, to show why Stratus had not established its entitlement to a preliminary injunction. The Court made no final determination on the merits of Stratus' counterclaims.

135. Docket no. 306 at 3.

136. *Id.* at 3; exhibit E.

137. *Id.* at 3; exhibit D.

138. *Id.* at 3; exhibit E.

139. *Id.* at 3–4; exhibit E.

140. *Id.* at 3–4.

141. Docket no. 306 at 4–5.

142. *Id.;* exhibit F.

143. *See Clorox Co. Puerto Rico,* 228 F.3d at 34; *see also S.C. Johnson & Son, Inc.,* 241 F.3d at 238–39.

144. *Pizza Hut, Inc.,* 227 F.3d at 495 n. 5 (citations omitted).

145. *Pfizer, Inc. v. Miles, Inc.,* 868 F.Supp. 437, 450 (D.Conn.1994) (quoting *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 921 (3d Cir.1990), *cert. denied,* 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990) (emphasis in original) and holding that advertisement comparing whole-

specifically address Healthpoint's argument as it relates to the statement about what drug manufacturers are required to do under federal law, that particular statement, as well as any other, must be construed within the context of the entire letter and not in isolation. Here, the question is what message is conveyed by Healthpoint's letters and is that message false. In addition, while the statement that "Accuzyme has no AB rated therapeutic equivalent" may convey a true message by itself, the question is do the alleged omissions actually make that message untrue. These are questions for the jury. Because Stratus has raised questions of material fact regarding the falsity of Healthpoint's letters to pharmacists and practitioners, Healthpoint is not entitled to summary judgment on false advertising claims grounded in those letters.

■■■ Stratus asserts a letter posted on the internet by Michael Steadman, which states that Healthpoint's competitors have no sales representatives, is false.[146] Stratus is not specifically named in the letter, and Stratus cites no evidence suggesting that this statement is false when placed in context. Healthpoint argues that Alberto Hoyo's testimony shows that Stratus has six sales representatives but no nationwide sales force.[147] Healthpoint also contends that because Stratus has failed to produce

"details about its sales representatives or what they did," Stratus has no evidence that Steadman knew a sales force existed and deliberately provided the false information. Because Stratus has not offered any evidence raising a genuine issue of material fact about the falsity of Steadman's statement, the Court concludes that Healthpoint is entitled to summary judgment for any false advertising claim based on that statement.

■■■ Healthpoint also argues Stratus has no evidence that: certain alleged statements were made by Healthpoint representatives; the statements, if made, were false; or Stratus was harmed by the statements.[148] The statements in issue include the following:

a) Kovia's debridement effectiveness is not as good as Accuzyme;

b) The amount of papain in Kovia is an inefficient and ineffective quantity;

c) Accuzyme contains more papain than it actually does;

d) Kovia contains sodium metabisulfite;

e) Ziox contains less papain than Panafil;

f) Kovia contains an inactive ingredient that causes skin irritation; and

g) Accuzyme's label accurately reflects its papain content.[149]

In its response, Stratus does not address statements a, b, c, e, and g or present

---

sale prices was not untrue when key differences in products were detailed); *E.R. Squibb & Sons, Inc. v. Stuart Pharmaceuticals*, No. 90–1178(AET), 1990 WL 159909 at * 15 (D.N.J. Oct.16, 1990) (defendant made material omission by failing to disclose side effects of its product in comparison advertisement); *Oil Heat Inst. of Or. v. Northwest Natural Gas*, 708 F.Supp. 1118, 1123 (D.Or.1988) (defendant's failure to disclose need for more maintenance than merely changing filters twice yearly on natural gas furnace might be viewed by fact finder as failure to disclose material facts about its product).

**146.** Docket no. 306 at 7.

**147.** Docket no. 317 at 5 (citing docket no. 258 at 2, July 31, 2001 Order denying Stratus emergency relief). The Court previously discussed this internet letter in a July 31, 2001 Order denying Stratus emergency relief because there was no evidence that Stratus' "sales representatives regularly contact pharmacists as opposed to attending conventions, calling on physicians and drug wholesalers, and providing in-service clinics for wound care clinicians, as Mr. Hoyo testified before the Court." Docket no. 258 at 2.

**148.** Docket no. 296 at 9–10.

**149.** *Id.*

evidence suggesting that those particular statements were made to consumers by Healthpoint representatives.[150] Therefore, to the extent that Stratus relies on statements a, b, c, e, and g to support claims of false advertising by Healthpoint representatives, Healthpoint is entitled to summary judgment.

As for statements d and f, Stratus has offered excerpts from the deposition testimony of Peggy Goodnight suggesting a Healthpoint representative may have said that Kovia contained sodium metabisulfite and that an extra ingredient in Kovia caused skin irritation.[151] Healthpoint argues that Goodnight's testimony is non-committal and too speculative to defeat a motion for summary judgment.[152] Whether a Healthpoint representative actually made the alleged statements; whether the statements are false; and what weight to give Goodnight's testimony are questions for the jury. Because Stratus has raised genuine issues of material fact regarding statements d and f, Healthpoint is not entitled to summary judgment on Stratus' claims that Healthpoint's representatives made false statements to consumers about Kovia.

With regard to the remaining elements of Stratus' false advertising claims, as discussed above, Stratus may be entitled to presumptions of actual deception and of causation and injury because Stratus has raised genuine issues of material fact about the falsity of Healthpoint's letters as well as the statements allegedly made by a Healthpoint representative about Kovia and because Stratus and Healthpoint are obvious competitors. Therefore, Health-point is not entitled to summary judgment on the elements of Stratus' *prima facie* claim of false advertising based on Health-points letters and the statements allegedly made by a Healthpoint representative. However, as with Accuzyme's label, should Healthpoint's letters and the Healthpoint representative's statements be found literally true or ambiguous but misleading, Stratus has presented no evidence raising a genuine issue of material fact regarding actual consumer deception or causation and injury. Therefore, to the extent Healthpoint's letters and the representative's alleged statements are literally true or ambiguous but misleading, Healthpoint is entitled to summary judgment.

In its motion for summary judgment, Healthpoint argues in a terse statement that summary judgment is proper if Stratus cannot establish "that the statements Healthpoint did make were false or misleading, material, or damaging." [153] Although mindful that little more is necessary for a no evidence point on amount of damages in a motion for summary judgment, the Court cannot conclude from the context of the motion that Stratus had fair notice Healthpoint may have been challenging more than the essential elements of Stratus' *prima facie* case of false advertising. Healthpoint does argue that Stratus "lacks any evidentiary basis for a monetary recovery." [154] However, this argument is raised for the first time in Healthpoint's reply in support of its motion for summary judgment and is not responsive to any argument asserted by Stratus in its response. Accordingly, based on the present record, the Court

150. *See* docket no. 306 at 7–8 (addressing only statements d and f).

151. *Id.;* exhibit H.

152. Docket no. 317 at 5–6.

153. Docket no. 296 at 6. Because Healthpoint has not argued that Stratus is unable to estab-lish the elements of its request for injunctive relief, the Court will not address whether summary judgment is proper on Stratus' request for such relief.

154. *Id.* at 7.

concludes that Healthpoint is not entitled to summary judgment on the issue of whether Stratus can prove monetary damages. In the event the Court has misconstrued Healthpoint's motion, the Court's decision is without prejudice to Healthpoint filing a supplemental motion for summary judgment on the issue of whether Stratus has evidence of monetary damages.

### Summary

In sum, Healthpoint is entitled to summary judgment on Stratus' false advertising counter claims to the extent that: (1) they can be construed as misbranding or mislabeling claims; (2) they are premised on an allegation of an unnecessary label change to prevent the substitution of Kovia for Accuzyme; (3) they are based on an allegation that Healthpoint owed a duty to Stratus to label Accuzyme to allow "knock-offs;" (4) they can be construed as alleging Accuzyme's labeling is misleading but either ambiguous or literally true; (5) they are based on an allegation that Accuzyme's label is a false advertisement; and (6) they are based on Steadman's internet letter or the alleged misrepresentations in statements a, b, c, e, and g, as set forth above. Healthpoint is also entitled to summary judgment on any counterclaim alleging that Healthpoint's letters to pharmacists and practitioners or its representative's statements are literally true or ambiguous; but Healthpoint is not entitled to summary judgment on any counterclaim that those same letters are literally false. Healthpoint is not entitled to summary judgment on: (1) its argument that Stratus is judicially estopped from arguing that the current Accuzyme label is false and misleading because it indicates Accuzyme has less papain than Kovia and from disputing that Kovia has a different amount of papain activity than Accuzyme; (2) Stratus' false advertising counterclaims based on allegations that Healthpoint made false statements in letters to pharmacists or practitioners; and (3) Stratus' false advertising claims based on the alleged misrepresentations in statements d and f, as discussed above.

### B. Healthpoint's Motion for Partial Summary Judgment on its False Advertising Claims

Healthpoint has moved for summary judgment on the "liability portion of its false advertising claim," arguing that a permanent injunction is proper because the liability and harm elements are conclusively proven.[155] Healthpoint asserts that only the amount of monetary damages to be awarded need be decided by a jury.[156] Because Healthpoint has moved for summary judgment on its own claim, it must establish the absence of a genuine issue of material fact on each element of the false advertising claim and disprove an essential element of any affirmative defense raised by Stratus.[157]

#### 1. Prima Facie Case

Relying on evidence produced for and discussed in the Court's June 1, 2001 Order on the cross motions for preliminary injunction, Healthpoint argues there is no dispute that Stratus advertised Kovia and Ziox as "generics" for Accuzyme and Panafil or "brand names at generic prices." [158] These advertisements, Healthpoint argues, are literally false even under

155. Docket no. 297.

156. *Id.* at 8.

157. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194–95 (5th Cir.1986).

158. Docket no. 297 at 3 (citing docket no. 180). The Court notes that Healthpoint has not moved for summary judgment on its claims that Stratus falsely advertised: Kovia as having "similar clinical effects," Kovia and Ziox are "economical" and "high quality"

the broad definition of generic as urged by Stratus that "generic" includes all products with the "same active ingredients, the same strength, the same dosage form, and the same route of administration."[159] Healthpoint cites the preliminary injunction testimony of Albert Hoyos, as discussed in the June 1, 2001 Order, admitting that Kovia contains $1.1 \times 10^6$ USP units of papain and Accuzyme contains $8.3 \times 10^5$ USP units of papain and that representing Kovia as generic to Accuzyme was a mistake.[160] Healthpoint also cites the notation in the Order stating that "Stratus concedes that it has no tests adequate to show the therapeutic equivalence, bioequivalence or bioavailability of Kovia and Ziox to Accuzyme and Panafil White."[161] In addition, Healthpoint cites the Order's discussion of Gordon Johnson's testimony that "Stratus' study of Accuzyme and Kovia on two burned pigs would not be sufficient to show that Accuzyme and Kovia are bioequivalent."[162] Healthpoint notes that "Stratus disputes, as a matter of law, the meaning of the word 'generic' enforced by the FDA and adopted by this Court" but argues the dispute does not raise a question of material fact about the falsity of Stratus's advertising.[163]

Stratus argues that Healthpoint has not cited "any record evidence" to support the preliminary factual statement in the motion for summary judgment that Stratus' advertisements "were not only literally false but they created confusion in the marketplace leading even sophisticated consumers, such as pharmacists, to believe that the products may be substituted."[164] Stratus argues that contrary to Healthpoint's position, the facts in this statement "are very much in dispute."[165] Stratus also argues that whether its advertising was literally false is a question of fact for the jury. Stratus asserts that Healthpoint has presented no evidence, such as comparative studies, to establish that the products at issue are not generic, generic equivalents, therapeutic equivalents, or pharmaceutical equivalents.[166] Stratus argues that Healthpoint cannot satisfy its summary judgment burden merely by proving Stratus' claims are unsubstantiated, Healthpoint must also establish the claims are literally false or misleading.[167] Stratus cites the testimony of Gerald Meyer, an expert for Healthpoint, that the FDA would consider Stratus' use of the word "generic" was misleading and that he was unable to say whether advertising Kovia and Ziox as "brand names at generic prices" was false or misleading.[168] Stratus does not deny that Kovia contains $1.1 \times 10^6$ USP units of papain and Accuzyme contains $8.3 \times 10^5$ USP units of papain but does argue Healthpoint has not acknowledged that until at least February 2001 Accuzyme and Kovia were both advertised as containing $1.1 \times 10^6$ USP units of papain.[169] Stratus contends Hoyo's testimony that using the term "generic" was a

alternatives to Accuzyme and Panafil; and Kovia and Ziox have the "same ingredients" or the "same active ingredients" as Accuzyme and Panafil. *See* docket no. 180 at 75–76.

159. *Id.* at 4.

160. *Id.* (citing docket no. 180 at 60 and 64).

161. *Id.* (citing docket no 180 at 36 n. 141, which cited docket no. 167 at 4).

162. *Id.* (citing docket no. 180 at 73).

163. *Id.* at 4–5.

164. Docket no. 307 at 1.

165. *Id.* at 1–2 (citing docket no. 297 at 1).

166. *Id.* at 4.

167. *Id.*

168. *Id.* at 3 (citing May 8, 2001 injunction transcript at 247–249).

169. *Id.* at 5.

mistake was in reference to a "form submitted to the Texas State Medicaid Formulary" and is not evidence that Stratus intentionally misrepresented its products.[170] Finally, Stratus argues that: (1) the definition of "generic" is not provided in statutes or by the Code of Federal Regulations; (2) the jury should hear the various definitions of "generic"; and (3) Healthpoint has offered no evidence that the FDA enforces a particular meaning of the word "generic." [171]

In reply, Healthpoint incorporates by reference the evidence discussed in its response to Stratus' motion for partial summary judgment and argues the evidence establishes literal falsity by showing that: (1) Kovia and Accuzyme have different papain amounts under the Lot G standard; (2) no data indicates Kovia is generic to Accuzyme or Ziox is generic to Panafil; and (3) Hoyo has admitted that Stratus' products are not generic to Accuzyme and Panafil.[172] Healthpoint argues that Stratus has failed to raise a fact issue about whether its advertisements were literally false and that where, as here, the evidence is uncontroverted, falsity is not a jury question.[173]

■ The Court concludes that Healthpoint has not conclusively shown its entitlement to summary judgment on the issue of whether Stratus' advertising was or is false or misleading. Foremost, Healthpoint's reliance on the Court's "findings" in the June 1, 2001 Order is misplaced. In making those findings, the Court was merely reciting the testimony relevant to establishing a likelihood of success on the merits and irreparable harm. The Court did not weigh the evidence, make credibility assessments, or determine the merits of Healthpoint's claim. Additionally, although it is undisputed that Stratus used the term "generic" in advertising Kovia and Ziox, the record is less clear that such advertisements, when placed in context, were false. Setting aside the questions of whether under the FDA standards, Kovia and Ziox are generics for Accuzyme and Panafil, questions for the FDA and not for the Court, the record reflects that Stratus attempted to manufacture Kovia by "knocking off" Accuzyme's label and to market the product in such a way to suggest the products were interchangeable. When and what Stratus knew of the differences in the products and whether even with that knowledge, Stratus continued to market Kovia as a generic for Accuzyme are questions of fact for which Healthpoint has provided no conclusive evidence. Moreover, that Stratus has "pig tests" as opposed to human testing to show how Kovia performs and that the "pig tests" may not be adequate to support Stratus' claims is some evidence supporting Healthpoint's claim of false advertising, but to satisfy its evidentiary burden, Healthpoint must also establish that it was false or misleading to advertise Kovia could be used in place of Accuzyme when Stratus was making the "generic" claim.[174]

170. *Id.*

171. *Id.* at 5–6.

172. Docket no. 315 at 1–2. For the most part, Healthpoint's response to Stratus' motion for partial summary judgment references the evidence considered by the Court in the June 1, 2001 Order when determining that Healthpoint had shown a likelihood of success on the merits of some of its claim.

173. *Id.* at 2.

174. *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1091 (7th Cir.1994) ("If the challenged advertisement makes implicit or explicit references to tests, the plaintiff may satisfy its burden by showing that those tests do not prove the proposition; otherwise, the plaintiff must offer affirmative proof that the advertisement is false."); *Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.*, 902 F.2d 222, 229 (3d Cir.1990) ("We hold that it is not sufficient for a Lanham Act plaintiff to show only that the defendant's advertising

This Healthpoint did not do. Because Healthpoint failed to establish that there is no genuine issue of material fact as to whether Stratus advertising that Kovia and Ziox [175] are generics for Accuzyme and Panafil is false or misleading, an essential element of its *prima facie* case, Healthpoint is not entitled to summary judgment on its false advertising claim.

## 2. Affirmative Defenses

Healthpoint also argues that affirmative defenses asserted by Stratus lack merit.[176] Stratus did not address this argument. In its answer to Healthpoint's third amended complaint, Stratus raised the following affirmative defenses:

1. Healthpoint failed to assert a claim upon which any relief can be granted.
2. Stratus' use of the names Accuzyme and Panafil are protected by the Trademark Act.
3. Stratus' use of the names Kovia and Ziox do not create the likelihood of confusion with Healthpoint's products.
4. Stratus' use of the names Accuzyme and Panafil have not diluted Healthpoint's products.
5. Healthpoint's equitable claims are barred by equitable estoppel, laches, and unclean hands.
6. The Court lacks subject matter over some or all of Healthpoint's claims.
7. Some or all of Healthpoint's claims are barred by failure to exhaust administrative remedies.

8. Healthpoint's action is barred by the doctrines of primary jurisdiction and preemption.
9. Healthpoint lacks standing to claim any relief because its products have not been determined to be legal by the FDA.
10. Healthpoint brought this action in bad faith and for an improper motive.
11. Healthpoint's action arises from its fear of losing profits to competitors.
12. Stratus has not violated or infringed upon any registered, chartered, trademarked, copyrighted, or patented rights of Healthpoint.
13. Healthpoint was not damaged by any illegal conduct by Stratus.
14. Healthpoint's sales of Accuzyme and Ziox are *per se* violations of the Food, Drug and Cosmetic Act, barring any relief.[177]

Healthpoint challenges each of these asserted affirmative defenses except number 6. The Court concludes that, with respect to Healthpoint's false advertising claim, some affirmative defenses lack merit for the following reasons:

a. Numbers 3, 4, and 12 are not relevant to the false advertising claim.
b. Numbers 1, 8, 9, 14 and the unclean hands portion of number 5 were disposed of in the June 1, 2001 Order on preliminary injunctive relief.
c. For number 7, Stratus failed to present evidence of any unexhausted

claims of its own drug's effectiveness are inadequately substantiated under FDA guidelines; the plaintiff must also show that the claims are literally false or misleading to the public.)''

**175.** With regard to Ziox and Panafil, Healthpoint has offered no evidence to establish whether: the ingredients in these products are the same or not; the products are equally effective; or Healthpoint has done testing on Ziox showing the product is not similar to

Panafil. Healthpoint's summary judgment arguments lump Ziox with Kovia, but the evidence cited by Healthpoint is chiefly related to Kovia and Accuzyme. Therefore, Healthpoint is not entitled to summary judgment on the question of whether advertisements about Ziox were false or misleading.

**176.** Docket no. 297 at 6.

**177.** Docket no. 168 at 9–10.

administrative remedies to rebut Healthpoint's assertion that there are no administrative remedies applicable to its false advertising claim.

d. For numbers 10 and 11, Stratus failed to rebut Healthpoint's argument by citing authority showing that these assertions are affirmative defenses as a against a false advertising claim as a matter of law.

e. Number 13 is merely a denial of an element Healthpoint must prove to establish its false advertising claim.

Healthpoint's argument regarding number 2, that Stratus has no right to use names Accuzyme or Panafil because Stratus' advertising is false or misleading,[178] fails because there is a genuine issue of fact about whether that advertising is false or misleading. Similarly, Healthpoint's argument that Stratus's assertion of equitable estoppel and laches is groundless fails because there are fact issues about when Stratus knew Accuzyme was labeled under the F–3 standard and not the G standard and whether Stratus could rely on Accuzyme's label. Because Healthpoint did not address affirmative defense number 6, the Court makes no determination on the merits of the affirmative defense. Therefore to the extent that Stratus has asserted its affirmative defenses against Healthpoint's false advertising claims, Healthpoint is entitled to summary judgment on numbers 1, 3, 4, 5 in part as discussed above, and 7 through 14. Summary judgment is denied as to numbers 2, 5 in part as discussed above, and 6.

## C. Stratus' Motion for Partial Summary Judgment

Stratus has moved for partial summary judgment, arguing that Healthpoint has failed to produce admissible evidence to support any of its claims for damages, including those for misappropriation of trademark and conspiracy,[179] allegedly caused by advertising Stratus no longer uses.[180] Specifically, Stratus argues that: (1) there is no evidence that any of Stratus advertising was literally false; (2) Healthpoint's survey is not evidence of actual consumer deception; (3) Healthpoint has demonstrated only that Stratus's old advertising contained the word "generic;" (4) a single Stratus letter to Cook County, in response to a bid request, used the word "bioequivalent" and Healthpoint won the bid; and (4) Healthpoint has no evidence to support claims in its third amended complaint that Stratus marketed products as "substitutes" for Accuzyme or Panafil.[181] Stratus also argues Healthpoint is unable to demonstrate that any lost profits it may have incurred were not the result of increased market competition and that Healthpoint has no evidence "identifying or quantifying lost profits."[182] Stratus argues further that actual damages for loss of goodwill or reputation are rarely awarded under the Lanham Act and that to the extent such damages are available, Healthpoint cannot satisfy its burden of proof.[183] Finally, Stratus argues Healthpoint is not entitled to attorney's fees or punitive damages because there is no evidence showing

---

178. Docket no. 297 at 6.

179. Healthpoint has alleged claims for federal false designation of origin, false description, and false representations of fact in violation of § 1125(a)(1)(B) of the Lanham Act; common law false advertising; federal unfair competition; common law palming off, misappropriation of Healthpoint's reputation and goodwill; tortious interference with Health-

point's business; and civil conspiracy. Docket no. 152.

180. Docket no. 299 at 2.

181. *Id.* at 4–8, 11.

182. *Id.* at 8–9.

183. *Id.* 9–10.

that Stratus' acts were willful, wanton, or malicious.

Healthpoint argues that Stratus' advertising was literally false because neither Accuzyme or Panafil have an approved ANDA, precluding Stratus' use of the term "generic" to describe its products; an improper "implicit message," that the products at issue can be "indiscriminately substituted," is suggested by Stratus' advertising; and Stratus' advertisements are unsubstantiated by proper testing.[184] Healthpoint also argues it has tests showing that at least two lots of Kovia, 5025 and 5041, were not therapeutic equivalents of Accuzyme and that Albert Hoyo has testified that Kovia and Ziox are not "therapeutically equivalent" to Healthpoint's products.[185] Healthpoint contends that because Stratus' advertisements are literally false, Healthpoint is entitled to presumptions of actual consumer deception and of causation and injury.[186] Healthpoint argues the presumption of causation and injury applies to its claims for marketplace damages, loss of goodwill, and costs for countering Stratus' advertisements.[187]

Alternatively, Healthpoint contends its survey of physicians who prescribe debridement products shows the "likelihood" that Stratus' advertisements would cause mistake, confusion, or deception.[188] Healthpoint states that it has actual evidence of causation because Stratus produced "wholesaler new item fact sheets" and based on Stratus' refusal to produce the communications or bid applications sent to Stratus' distributors, "it is only fair to infer that Stratus made similar representations to other distributors."[189] Additionally, Healthpoint argues that "for all practical purposes," Stratus has admitted causation when it alleged the Accuzyme label change caused lost sales of Kovia by "reducing the chance that Kovia could be considered an alternative to Accuzyme" and by failing to identify a doctor who has prescribed Kovia or Ziox.[190] From this evidence, Healthpoint argues a jury could reasonably infer causation from the pharmacists' substitution of Stratus' products for those of Healthpoint.[191] Healthpoint further argues that its injuries are evidenced in the amount of Stratus' net profits from sales of Kovia and Ziox, when the substitutions were made, and from Healthpoint's corrective advertising expenditures.[192] Healthpoint has not presented any argument or evidence regarding its claims for lost good will or reputation and for lost profits resulting from Stratus' advertising.

With regard to Stratus' deliberate efforts to deceive, Healthpoint suggests its May 17, 2001 trial brief contains evidence that Stratus continued to misrepresent the qualities of Kovia and Ziox for nine months after this lawsuit was filed and also argues

---

184. Docket no. 310 at 3–5.

185. *Id.* at 5–6.

186. *Id.* at 8–9.

187. *Id.* at 9–10.

188. *Id.* at 6–7.

189. *Id.* at 11.

190. *Id.* (citing Docket no. 169 at ¶ 13(a)).

191. *Id.* at 12.

192. *Id.* at 12–14. The Court notes Healthpoint's allegation that Stratus has continuously failed to comply with discovery requests and orders. In the event the Court finds Stratus is entitled to summary judgment because of Healthpoint's lack of evidence on damages, Healthpoint seeks as sanctions against Stratus, "deemed findings for the purpose of computing any recovery of damages for Healthpoint." Docket no. 310 at 14–22. Alternatively, Healthpoint seeks a postponement of summary judgment in order that further discovery may be taken of Stratus' financial information. These issues will be discussed below.

that Hoyo's testimony is clear evidence of deliberate deception.[193] As additional evidence of deliberate deception, Healthpoint cites a Stratus press release, issued after the June 1, 2001 preliminary injunction order, which allegedly "falsely announces that [Stratus] prevailed" at the preliminary injunction hearing.[194]

In reply, Stratus argues Healthpoint has failed to respond to the motion for summary judgment by presenting evidence suggesting that through use of the term "generic" Stratus falsely advertised its products or that anyone was deceived by the advertising.[195] Stratus also asserts that Healthpoint's reports showing the chemical makeup of Kovia do not support Healthpoint's claim that Kovia is not therapeutically equivalent to Accuzyme.[196] Stratus argues that Healthpoint's survey is fatally flawed because it does not ask the physicians to interpret the word "generic", the people surveyed did not see any Stratus advertisement, and only seven percent of the respondents believed that a substitute drug needs FDA approval.[197] Stratus contends that its recent press release, which Healthpoint cites as evidence of continued deception, was merely a "truthful response" to Healthpoint's press release.[198] Stratus denies it admitted causation and argues that "it would be a bold leap of faith for a jury to infer that all sales of Kovia and Ziox were the result of 'illegal substitution'" when there is no evidence of any illegal substitution.[199]

■ As discussed in detail above, the Court concludes that whether Stratus' advertising is literally false, possibly justifying presumptions of actual consumer deception and causation and injury in Healthpoint's favor, is a disputed issue of material fact for the jury to resolve and summary judgment is not proper on that ground. However, the Court concludes that Healthpoint has failed to raise a genuine issue of material fact about whether consumers were actually deceived by Stratus' advertisements. At best, Healthpoint's survey shows the "likelihood" of deception, as Healthpoint stated in its summary judgment response. The "consumers" were not asked about the message they perceived from the advertisements or what they thought the message meant.[200] The physicians who participated in the survey were not even asked to view the advertisements or any questions about their understanding of the term "generic." Therefore, Healthpoint has not established that a substantial number of consumers were *actually* deceived by the advertisements.[201] In other words, Healthpoint has failed to establish that Stratus' advertisements were material to consumer deception.[202] To the extent Stratus' advertisements are found to be literally true or

---

**193.** *Id.* at 7. From a fair reading of this brief, the Court cannot conclude that it contains evidence showing continued deception for nine months after the lawsuit was filed.

**194.** *Id.* at 8.

**195.** Docket no. 312 at 1–2.

**196.** *Id.* at 3.

**197.** *Id.* at 4.

**198.** *Id.*

**199.** *Id.* at 5.

**200.** *See Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Rhone–Poulenc Rorer*

*Pharmaceuticals, Inc.,* 19 F.3d 125, 134–36 (3d Cir.1994) (affirming and discussing district court's findings that "well-designed consumer survey first asks 'communication questions' to see what messages the viewer got .... In the next step, the survey asks those who received a particular message ... questions to determine what the viewers thought the message meant.")

**201.** *Pizza Hut,* 227 F.3d at 497.

**202.** *See id* at 502–03 ("[T]he study failed to indicate whether the conclusions [that Papa John's has better ingredients than other national pizza chains] resulted from the advertisements at issue, or from personal eating

ambiguous such that Healthpoint must establish actual consumer deception to satisfy an element of its *prima facie* case, Stratus is entitled to summary judgment.

As for deliberate deception, the Court concludes that Healthpoint, through Hoyo's testimony,[203] has presented some evidence that raises a genuine issue of material fact about Stratus' intent in marketing Kovia and Ziox. Although Stratus replied in part to Healthpoint's argument on deliberate deception, Stratus did not attempt to refute or clarify Hoyo's testimony.[204] Thus, Stratus is not entitled to summary judgment on the issue of whether it deliberately deceived consumers about Kovia and Ziox.

Stratus moved for summary judgment on Healthpoint's claims for lost profits and for damages to goodwill, arguing that Healthpoint has no evidence of these damages. The Court notes that:

> When assessing these actual damages, the district court may take into account the difficulty of proving an exact amount of damages from false advertising, as well as the maxim that "the wrongdoer shall bear the risk of the uncertainty which his own wrong has created."[205]

However, assuming Stratus' advertising is literally false and Stratus is unable rebut the presumptions of actual deception and causation and injury, Healthpoint has presented some evidence raising genuine issues of material fact about the amount of money necessary to compensate Healthpoint for lost profits and damage to its goodwill and reputation. The Court further notes Healthpoint did present evidence[206] that raises genuine issues of material fact about whether Stratus earned profits from its allegedly false advertising and about whether Healthpoint may be entitled to compensation for corrective advertising.[207] This evidence includes Stratus' invoices for sales of tubes of Kovia and Ziox in 1999 and 2000,[208] price lists reflecting the wholesale price of Kovia and Ziox,[209] invoices for production costs and promotional expenditures,[210] and Hoyo's testimony about Stratus' payment for a one-page magazine advertisement.[211] Stratus' sales of Kovia and Ziox (and net and gross profits from those sales) are factual issues in connection with Health-

---

experiences, or from a combination of both. Consequently, the results of this study are not reliable or probative to test whether the slogan was material.")

203. Docket no. 310, exhibit C at 366.

204. Stratus argued instead that its press release after the June 1, 2001 preliminary injunction Order was a truthful response to Healthpoint's press release, that the release states Stratus' products are "high quality economic alternatives" with the same ingredients as found in Healthpoint's products and that the release did not claim the therapeutic equivalence of Stratus' products. Docket no. 312 at 4.

205. *Porous Media*, 110 F.3d at 1336 (quoting *Otis Clapp & Son v. Filmore Vitamin Co.*, 754 F.2d 738, 745 (7th Cir.1985) which quoted *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265, 66 S.Ct. 574, 90 L.Ed. 652 (1946)).

206. Docket no. 310, exhibits J, K, and L.

207. *See Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 695 (6th Cir.2000)(affirming district court's finding that plaintiff "was only entitled to [defendant's profits] if it could show that defendant gained additional sales due to the advertisement, or that plaintiff lost sales, or was forced to [sell] its product a lower price"), *cert. denied*, 531 U.S. 927, 121 S.Ct. 306, 148 L.Ed.2d 245 (2000).

208. Docket no. 310, exhibit J.

209. *Id.*, exhibit K.

210. *Id.*, exhibit L.

211. *Id.*, exhibit E at 737.

point's theory that every sale of Kovia/Ziox came at the expense of Accuzyme/Panafil such that Stratus' sales and profits become evidence and a measure of Healthpoint's lost profits and goodwill. Accordingly, the Court concludes that Stratus is not entitled to summary judgment on Healthpoint's claims for lost profits and for lost goodwill and reputation.

## VII. *MISCELLANEOUS MATTERS*

In the event the Court would find Stratus is entitled to summary judgment because of Healthpoint's lack of evidence on damages, Healthpoint seeks as sanctions against Stratus, "deemed findings" [212] "for the purpose of computing any recovery of damages for Healthpoint." [213] Healthpoint alleges that Stratus has continuously failed to comply with discovery requests and orders such that the entry of deemed findings as a discovery sanction is appropriate.[214] Alternatively, Healthpoint seeks a postponement of summary judgment in order that further discovery may be taken of Stratus' financial information.[215] Because the Court has concluded that Stratus is not entitled to summary judgment on Healthpoint's claims for lost profits and for lost good will and reputation, to the extent that Healthpoint's request for deemed admis-

sions and further discovery is contingent on a ruling adverse to Healthpoint, the requests may be *denied* as moot. Otherwise, the request for discovery sanctions in the form of deemed admissions or, alternatively, for a re-opening of discovery is *denied.* Stratus has repeatedly represented that it has produced all relevant sales and marketing information in its possession. Healthpoint is free to argue to the jury that the jury may find, for example, that Stratus' net profits are equivalent to the wholesale price of Kovia/Ziox multiplied by the number of tubes of Kovia/Ziox that have been manufactured less the wholesale production cost per tube less promotional expenditures or that each sale of Kovia/Ziox came at the expense of the sale of Accuzyme/Panafil.[216]

## VI. *CONCLUSION*

Healthpoint's motion for a partial summary judgment on Stratus' counterclaims [217] is **granted in part and denied in part.**[218] Healthpoint's motion for partial summary judgment on its false advertising claim [219] is **granted in part and denied in part.**[220] Stratus' motion for partial summary judgment on Healthpoint's claims for damages [221] is **granted in part and denied in part.**[222] Healthpoint's alternative mo-

---

212. Docket no. 310 at 20.

213. *Id.* at 21.

214. *Id.* at 14–22.

215. *Id.* at 21–22.

216. *See* docket no. 310 at 21.

217. Docket no. 296.

218. *See* text at 33 and 34, above, for a summary of the rulings on this motion.

219. Docket no. 297.

220. The portion of Healthpoint's motion that requests entry of summary judgment on its

false advertising claim is *denied;* the portion of the motion that requests entry of summary judgment on Stratus' affirmative defenses is *granted* with respect to affirmative defense 5 in part and affirmative defenses 1, 3, 4 and 7 through 14, and is *denied* with respect to affirmative defense 5 in part and affirmative defenses 2 and 6.

221. Docket no. 299.

222. Stratus' motion for summary judgment is *granted* to the extent Healthpoint has alleged that Stratus' advertisements are literally true or ambiguous; Stratus' motion is *denied* on the issue of whether Stratus deliberately deceived consumers about Kovia and Ziox, and on Healthpoint's claims for lost profits, and loss of goodwill and reputation.

tions for sanctions or to postpone the summary judgment pending further discovery [223] are **denied**.

**223.** Docket no. 310 at 14–22.