S.C. JOHNSON & SON, INC.,
Plaintiff–Appellee,

v.

The CLOROX COMPANY,
Defendant–Appellant.

Docket No. 00–7591.

United States Court of Appeals,
Second Circuit.

Argued Dec. 1, 2000.
Decided Feb. 23, 2001.

Steven A. Zalesin, (Joshua Burstein, on the brief), Patterson, Belknap, Webb & Tyler LLP, New York, NY, for Defendant–Appellant.

Lawrence I. Weinstein, (Kevin J. Perra, Eric German, on the brief), Proskauer Rose LLP, New York, NY, for Plaintiff–Appellee.

Before WALKER, Chief Judge, POOLER, Circuit Judge, and HALL, District Judge.*

---

* The Honorable Janet C. Hall, of the United States District Court for the District of Con-

HALL, District Judge:

This case involves a Lanham Act challenge to the truthfulness of a television commercial and print advertisement depicting the plight of an animated goldfish in a Ziploc Slide–Loc bag that is being held upside down and is leaking water. Plaintiff-appellee S.C. Johnson & Son manufactures the Ziploc bags targeted by the advertisements. In an Order dated April 6, 2000, the United States District Court for the Southern District of New York (Griesa, J.) permanently enjoined the defendant-appellant, The Clorox Company, manufacturer of Ziploc's rival Glad–Lock resealable storage bags, from using these advertisements. *See S.C. Johnson & Son v. The Clorox Co.*, No. 99 Civ. 11079 (TPG), 2000 WL 423534, 2000 U.S. Dist. LEXIS 4977 (S.D.N.Y. Apr. 19, 2000) ("*S.C. Johnson II*"). We conclude that the district court did not abuse its discretion in entering this injunction and accordingly affirm.

## BACKGROUND

In August 1999, Clorox introduced a 15–second and a 30–second television commercial ("Goldfish I"), each depicting an S.C. Johnson Ziploc Slide–Loc resealable storage bag side-by-side with a Clorox Glad–Lock bag. The bags are identified in the commercials by brand name. Both commercials show an animated, talking goldfish in water inside each of the bags. In the commercials, the bags are turned upside-down, and the Slide–Loc bag leaks rapidly while the Glad–Lock bag does not leak at all. In both the 15– and 30–second Goldfish I commercials, the Slide–Loc goldfish says, in clear distress, "My Ziploc Slider is dripping. Wait a minute!," while the Slide Loc bag is shown leaking at a rate of approximately one drop per one to two seconds. In the 30–second Goldfish I commercial only, the Slide–Loc bag is shown leaking while the Slide–Loc goldfish says, "Excuse me, a little help here," and then, "Oh, dripping, dripping." At the end

necticut, sitting by designation.

of both commercials, the Slide Loc goldfish exclaims, "Can I borrow a cup of water!!!"

On November 4, 1999, S.C. Johnson brought an action against Clorox under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for false advertising in the Goldfish I commercials. After S.C. Johnson moved for a preliminary injunction, the district court converted the evidentiary hearing on the motion to a trial on the merits under Fed.R.Civ.P. 65(a)(2).

Dr. Phillip DeLassus, an outside expert retained by S.C. Johnson, conducted "torture testing," in which Slide–Loc bags were filled with water, rotated for 10 seconds, and held upside-down for an additional 20 seconds. He testified about the results of the tests he performed, emphasizing that 37 percent of all Slide–Loc bags tested did not leak at all. Of the remaining 63 percent that did leak, only a small percentage leaked at the rate depicted in the Goldfish I television commercials. The vast majority leaked at a rate between two and twenty times slower than that depicted in the Goldfish I commercials.

On January 7, 2000, the district court entered findings of fact and conclusions of law on the record in support of an Order permanently enjoining Clorox from disseminating the Goldfish I television commercials. Specifically, the district court found that S.C. Johnson had shown by a preponderance of the evidence that the Goldfish I commercials are "literally false in respect to its depiction of the flow of water out of the Slide–Loc bag." *S.C. Johnson & Son, Inc. v. Clorox Co.*, No. 99 Civ. 11079 (TPG), 2000 WL 122209, at *1, 2000 U.S. Dist. LEXIS 3621, at *1–*2 (S.D.N.Y. Feb. 1, 2000) ("*S.C. Johnson I*").

The court found that "the commercial impermissibly exaggerates the facts in respect to the flow of water or the leaking of water out of a Slide–Loc bag." *Id.*, at *1. The court further found that:

> [t]he commercial shows drops of water coming out of the bag at what appears to be a rapid rate. In fact, the rate is about one fairly large drop per second. Moreover, there is a depiction of the water level in the bag undergoing a substantial and rapid decline. Finally, there is an image of bubbles going through the water.

*Id.* at *1, 2000 U.S. Dist. LEXIS 3621, at *2–*3. The district court found that "the overall depiction in the commercial itself is of a rapid and substantial leakage and flow of water out of the Slide–Loc bag." *Id.* at *1, 2000 U.S. Dist. LEXIS 3621, at *3. The court noted that "[t]his is rendered even more graphic by the fact that there is a goldfish depicted in the bag which is shown to be in jeopardy because the water is running out at such a rate." *Id.*

The district court found "that when these bags are subjected to the same kind of quality control test as used by Clorox for the Glad bags, there is some leakage in about two-thirds of the cases." *Id.* at *2, 2000 U.S. Dist. LEXIS 3621, at *4. However, the court found "that the great majority of those leaks are very small and at a very slow rate." *Id.* The court found that "[o]nly in about 10 percent of these bags is there leakage at the rate shown in the commercial, that is, one drop per second." *Id.* The district court further found that "[t]he problem with the commercial is that there is no depiction in the visual images to indicate anything else than the fact that the type of fairly rapid and substantial leakage shown in the commercial is simply characteristic of that kind of bag." *Id.*

Accordingly, the court held that "the Clorox commercial in question misrepresents the Slide–Loc bag product," and that this "finding relates to the different sizes and types of the Slide–Loc bags because there is no attempt to limit the commercial to any particular category." *Id.* at *3, 2000 U.S. Dist. LEXIS 3621, at *7. The court entered an injunction, noting that S.C. Johnson had shown irreparable harm sufficient to support an injunction because, as the court found, the Goldfish I commercials are literally false. *Id.* The district court rejected S.C. Johnson's other theories of relief under section 43(a) of the

Lanham Act, including a claim of implied falsity. *Id.* at *3, 2000 U.S. Dist. LEXIS 3621, at *6–*7. Clorox has not appealed this January 7 permanent injunction relating to the Goldfish I commercials.

In February 2000, Clorox released a modified version of the Goldfish I television commercials as well as a related print advertisement ("Goldfish II"). In the 15 second Goldfish II television commercial, a Ziploc Slide–Loc bag and Glad–Lock bag are again shown side-by-side, filled with water and containing an animated, talking goldfish. The bags are then rotated, and a drop is shown forming and dropping in about a second from the Slide–Loc bag. During the approximately additional two seconds that it is shown, the Slide–Loc goldfish says, "My Ziploc slider is dripping. Wait a minute." The two bags are then off-screen for approximately eight seconds before the Slide–Loc bag is again shown, with a drop forming and falling in approximately one second. During this latter depiction of the Slide–Loc bag, the Slide–Loc goldfish says, "Hey, I'm gonna need a little help here." Both bags are identified by brand name, and the Glad–Lock bag does not leak at all. The second-to-last frame shows three puddles on an orange background that includes the phrase "Don't Get Mad."

In the print advertisement, a large drop is shown forming and about to fall from an upside-down Slide–Loc bag in which a goldfish is partially out of the water. Bubbles are shown rising from the point of the leak in the Slide–Loc bag. Next to the Slide–Loc bag is a Glad–Lock bag that is not leaking and contains a goldfish that is completely submerged. Under the Slide–Loc bag appears: "Yikes! My Ziploc© Slide–Loc™ is dripping!" Under the Glad–Lock bag is printed: "My Glad is tight, tight, tight." On a third panel, three puddles and the words "Don't Get Mad" are depicted on a red background. In a fourth panel, the advertisement recites: "Only Glad has the Double–Lock™ green seal. That's why you'll be glad you got Glad. Especially if you're a goldfish."

After these advertisements appeared, S.C. Johnson moved to enlarge the January 7 injunction to enjoin the airing and distribution of the Goldfish II advertisements. On April 6, 2000, after hearing oral argument, the district court entered another order on the record, setting forth further findings of fact and conclusions of law in support of an Order permanently enjoining the distribution of the Goldfish II television commercial and print advertisement. The district court explicitly noted that it was "in a position, in [its] view, to decide the case based on the existing evidence without further evidence." *S.C. Johnson II*, 2000 WL 423534, at *1, 2000 U.S. Dist. LEXIS 4977, at *1–*2.

The court incorporated by reference its prior findings of fact from its January 7, 2000 Order, stating that it would "not attempt to repeat what was said in the earlier decision, although a great deal of it applies to the issue now presented to the court." *Id.* at *1, 2000 U.S. Dist. LEXIS 4977, at *2. The court then stated its finding that, "[f]ocusing now on the new television commercial, in my view it has the essential problems of the earlier 15 second commercial." *Id.* The court observed that the Goldfish II commercial "does not literally portray a rate of leakage which was portrayed in the earlier ad and which was the subject of certain of my findings in the earlier decision." *Id.* at *1, 2000 U.S. Dist. LEXIS 4977, at *3. Instead, the court noted,

> [t]here are two images shown of the slide-lock bag upside down with water coming out, two separate images. In each image a large drop immediately forms and the water drop falls. That is shown in the first image and then the commercial switches to some other subject and when the next image comes of the slide-lock bag there again is a large drop immediately forming and falling away.

*Id.* at *2, 2000 U.S. Dist. LEXIS 4977, at *4. The district court referenced its earlier finding that the Goldfish I commercials did not accurately depict either the rate or risk of leakage in Slide–Loc bags. *Id.* at

*2, 2000 U.S. Dist. LEXIS 4977, at *4–*5. The court then found that:

> [E]ssentially the same problem that I commented upon in the earlier decision exists with this commercial, with the present commercial. There is nothing to indicate that anything goes on with the slide-lock bags except the leaking of large drops as shown in the only two depictions that are relevant. There is nothing indicated about slow rate or rapid rate. There is nothing shown except one image and that is an image of a big drop of water falling out of the bag.
>
> There is nothing to indicate that this kind of leakage occurs in only some particular percentage of bags, and there is nothing to indicate the degree of risk of such leakage. There is only one image, and that is of a big drop falling out.

*Id.* at *2, 2000 U.S. Dist. LEXIS 4977, at *5.

The court rejected Clorox's argument "that what is really shown [in the Goldfish II television commercial] is that the leakage occurs at a rather slow rate, perhaps about once every seven or eight seconds." *Id.* According to the court, Clorox "bases this argument on the fact that if you take the elapsed time between the leak or the drop in the first image and the drop in the second image, this amount of time elapses." *Id.* at *2, 2000 U.S. Dist. LEXIS 4977, at *5–*6. The district court found, however, that "[t]here is nothing visually or in words to indicate that what is being depicted is some kind of a continuum of the condition of the bag from one image to the other." *Id.* at *2, 2000 U.S. Dist. LEXIS 4977, at *6. Rather, "[a]ll that is depicted is two separate images, each of which shows the same thing." *Id.* The district court found that "[w]hat is shown is the images, and what is omitted is any indication about the actual rates and degree and amount of leakage that the detailed evidence at the trial showed." *Id.* The court further found that the Goldfish II commercial "portray[s] ... a goldfish in danger of suffocating in air because of the outflow of water from the bag." *Id.*

The court concluded that the Goldfish II television commercial "is decidedly contrary to what was portrayed in the actual evidence about the bags at the first trial, and all in all the television commercial in my view is literally false." *Id.* at *3, 2000 U.S. Dist. LEXIS 4977, at *6. The court then addressed the Goldfish II print advertisement, which, it found "is, if anything, worse," because "[i]t has a single image of a Slide–Loc bag with a large drop about to fall away and a goldfish in danger of suffocating because the water is as portrayed disappearing from the bag." *Id.* at *3, 2000 U.S. Dist. LEXIS 4977, at *7. The district court concluded that the Goldfish II print advertisement "is literally false." *Id.* The court also found that the inability of a Ziploc Slide–Loc bag to prevent leakage is portrayed as an inherent quality or characteristic of that product. Accordingly, the court found that the Goldfish II television commercial and print advertisement "portray[ ] the leakage as simply an ever-present characteristic of the Slide–Loc bags." *Id.* at *3, 2000 U.S. Dist. LEXIS 4977, at *8.

The district court found, in the alternative, that the Goldfish II ads were false by necessary implication, a doctrine this court has not yet recognized, because consumers would necessarily believe that more viscous liquids such as soups and sauces would leak as rapidly as water. *Id.* at *3, 2000 U.S. Dist. LEXIS 4977, at *6–*7.

Clorox now appeals from this April 6, 2000 Order permanently enjoining the use of the Goldfish II television commercial and print advertisement.

## DISCUSSION

■ "We review the District Court's entry of a permanent injunction for abuse of discretion, which may be found where the Court, in issuing the injunction, relied on clearly erroneous findings of fact or an error of law." *Knox v. Salinas,* 193 F.3d 123, 128–29 (2d Cir.1999) (per curiam). "[T]he district judge's determination of the meaning of the advertisement [is] a finding of fact that 'shall not be set aside unless clearly erroneous.'" *Avis Rent A Car Sys., Inc. v. Hertz Corp.,* 782 F.2d 381, 384 (2d Cir.1986) (quoting Fed.R.Civ.P. 52(a)).

■ The district court found that the Goldfish II television commercial and print advertisement are literally false in viola-

tion of section 43(a). That section provides, in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

. . . . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). "Section 43(a) of the Lanham Act proscribes false designations of origin or false or misleading descriptions of fact in connection with any goods in commerce that are likely to cause confusion or that misrepresent the nature, characteristics, qualities, or geographic origin of the goods." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir.1995). "The Lanham Act does not prohibit false statements generally. It prohibits only false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services." *Id.* at 1052.

 This court has recently restated the general requirements for a claim brought under section 43(a):

To establish a false advertising claim under Section 43(a), the plaintiff must demonstrate that the statement in the challenged advertisement is false. "Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers."

*Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir.1997) (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir.1995)). It is also well-settled that, "in addition to proving falsity, the plaintiff must also show that the defendants misrepresented an 'inherent quality or characteristic' of the product. This requirement is essentially one of materiality, a term explicitly used in other circuits." *Id.* (citation and internal quotation marks omitted).

 In considering a false advertising claim, "[f]undamental to any task of interpretation is the principle that text must yield to context." *Avis*, 782 F.2d at 385.

Thus, we have emphasized that in reviewing FTC actions prohibiting unfair advertising practices under the Federal Trade Commission Act a court must "consider the advertisement in its entirety and not ... engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately." Similar approaches have been taken in Lanham Act cases involving the claim that an advertisement was false on its face.

*Id.* (citations omitted). Moreover, we have explicitly looked to the visual images in a commercial to assess whether it is literally false. *See Coca–Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 317–18 (2d Cir. 1982) (abrogated on other grounds by statute as noted in *Johnson & Johnson v. GAC Int'l, Inc.*, 862 F.2d 975, 979 (2d Cir.1988)); *see also Avis*, 782 F.2d at 385.

 "Where the advertising claim is shown to be literally false, the court may enjoin the use of the claim 'without reference to the advertisement's impact on the buying public.' Additionally, a plaintiff must show that it will suffer irreparable harm absent the injunction." *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir.1991) (citations omitted). Under section 43(a), however, "[w]e will presume irreparable harm where plaintiff demonstrates a likelihood of success in showing literally false defendant's comparative advertisement which mentions plaintiff's product by name." *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62 (2d Cir.1992).

## I. The district court's findings of fact are not clearly erroneous.

 Clorox argues that the district court committed clear error in finding that its Goldfish II television commercial and print advertisement contain literal falsehoods. We find no clear error in the district court's findings of fact in support of its conclusion that the Goldfish II television commercial and print advertisement are literally false as a factual matter. We note that the court made its finding of literal falsity after a seven-day bench trial. The evidence presented at trial clearly indicates that, as the court found, only slightly more than one out of ten Slide–Loc bags tested dripped at a rate of one drop per second or faster, while more than one-third of the Slide–Loc bags tested leaked at a rate of less than one drop per five seconds. Over half of the Slide–Loc bags tested either did not leak at all or leaked at a rate no faster than one drop per 20 seconds. Moreover, less than two-thirds, or 63 percent, of Slide–Loc bags tested showed any leakage at all when subjected to the testing on which Clorox based its Goldfish I and II advertisements.

The only Slide–Loc bag depicted in each of the two Goldfish II advertisements, on the other hand, is shown leaking and, when shown, is always leaking. Moreover, each time the Slide–Loc bag is on-screen, the Goldfish II television commercial shows a drop forming immediately and then falling from the Slide–Loc bag, all over a period of approximately two seconds. Accordingly, the commercial falsely depicts the risk of leakage for the vast majority of Slide–Loc bags tested.

Clorox argues that, because approximately eight seconds pass between the images of the drops forming and falling in the Goldfish II television commercial, the commercial depicts an accurate rate of leakage. However, the commercial does not continuously show the condition of the Slide–Loc bag because the Slide–Loc bag is off-screen for eight seconds. Likewise, the print ad does not depict any rate of leakage at all, other than to indicate that the Slide–Loc bag is "dripping." Clorox's argument that its commercial shows a "continuum" also fails given that in each of the Goldfish II advertisements is a background image containing three puddles of water, when only two drops form and fall in the television commercial and just one drop forms and nearly falls in the print advertisement.

Given the highly deferential standard of review accorded to the district court's findings entered after a bench trial, we cannot say that, having viewed the record in its entirety, we are left with the definite and firm conviction that a mistake has been committed. *See Mobil Shipping and Transp. Co. v. Wonsild Liquid Carriers Ltd.*, 190 F.3d 64, 67–68 (2d Cir.1999). We find no clear error in the district court's finding that the depiction of the risk of leakage from Slide–Loc bags in the Goldfish II television commercial and print advertisement is literally false as to an inherent quality or characteristic of Ziploc Slide–Loc storage bags.

## II. The district court committed no error of law.

Clorox alleges that the district court erred in finding literal falsity because "no facially false claim or depiction was present in the advertisements at issue in this case." As such, Clorox argues, the district court's finding of literal falsity "was based upon an interpretation of the ads that went beyond their facial or explicit claims." According to Clorox, the district court therefore must have based it injunction on the implied falsity of the ads. Clorox argues that the district court erred as a matter of law because "any alleged message beyond the literal claims in the advertisements [must] be proved by extrinsic evidence," upon which the district court undeniably did not rely in reaching its conclusions.

We disagree. The district court properly concluded that the Goldfish II advertisements are literally false in violation of

section 43(a) of the Lanham Act. The court looked at the Goldfish II television commercial and print advertisement in their entirety and determined that the risk of leakage from the Slide–Loc storage bag depicted in the ads is literally false based on the evidence presented at trial of the real risk and rate of leakage from Slide–Loc bags. The district court's conclusion that Clorox violated section 43(a) conforms to our earlier precedents applying the doctrine of literal falsity. In *Coca–Cola*, we reversed a district court's finding of no literal falsity in an orange juice commercial where:

> [t]he visual component of the ad makes an explicit representation that Premium Pack is produced by squeezing oranges and pouring the freshly-squeezed juice directly into the carton. This is not a true representation of how the product is prepared. Premium Pack juice is heated and sometimes frozen prior to packaging.

690 F.2d at 318. As in *Coca–Cola*, the Goldfish II advertisement depicts a literal falsity that requires no proof by extrinsic evidence: that Slide–Loc bags always leak when filled with water and held upside down.

Furthermore, the district court did not erroneously enjoin Clorox's advertisements on the basis of implied falsity in the absence of extrinsic evidence. Contrary to Clorox's allegations on appeal, the district court's conclusion is not based on implied falsity or the district court's own subjective interpretation of the Goldfish II advertisements. Indeed, Clorox's purported "literal" reading of the Goldfish II ads requires the viewer to assume that the bag is not leaking while it is off-screen. It is therefore Clorox's interpretation that relies upon implication, not the district court's. The district court did not conclude that the Goldfish II advertisements are literally true but "nevertheless likely to mislead or confuse consumers." It correctly concluded that the advertisements are facially false. As such, our holding

prohibiting a district judge from "determin[ing], based solely upon his or her own intuitive reaction, whether the advertisement is deceptive" under the doctrine of implied falsity is not implicated in this case. *Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir.1992).

■ Because we affirm the injunction on the basis of literal falsity, we need not reach the issue of whether the district court erred in concluding as an alternative ground that Clorox's Goldfish II television commercial and print advertisement are false "by necessary implication" because consumers would necessarily believe that more viscous liquids than water would also leak rapidly from Ziploc Slide–Loc storage bags.

Accordingly, we find no clearly erroneous findings of fact and no error of law. We therefore find that the district court did not abuse its discretion by permanently enjoining Clorox from disseminating the Goldfish II television commercial and print advertisement.

### III. The district court's Order is not impermissibly vague or overbroad.

■ Clorox also argues that the April 6, 2000 permanent injunction entered by the district court violates the requirements of Fed.R.Civ.P. 65(d). In the context of a permanent injunction, Rule 65(d) provides that "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained...." Fed.R.Civ.P. 65(d). "[U]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir.1996). "To comply with the specificity and clarity requirements, an injunction must 'be specific and definite enough to apprise those within its scope of the con-

duct that is being proscribed.'" *N.Y. State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1352 (2d Cir.1989) (quoting *In re Baldwin–United Corp.,* 770 F.2d 328, 339 (2d Cir.1985)). "This rule against broad, vague injunctions 'is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed,' and to be sure 'that the appellate court knows precisely what it is reviewing.'" *Rosen v. Siegel,* 106 F.3d 28, 32 (2d Cir.1997) (quoting *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.,* 824 F.2d 665, 669 (8th Cir.1987)).

■ We find the April 6, 2000 Order sufficiently clear. The district court clearly enjoined Clorox from disseminating the Goldfish II advertisements, in the television and print format. The court then concluded its Order by noting that "certainly Clorox has a right to portray in a truthful and fair way the differences between its product and the Slide–Loc product" because "[t]here are differences." *S.C. Johnson II,* 2000 WL 423534, at *3, 2000 U.S. Dist. LEXIS 4977, at *7. Clorox claims that the district court's April 6 opinion was insufficiently specific when the court stated that, "[i]f Clorox wants to pursue this subject, there should be an attempt to make a clean break with false and misleading depictions and portray something that indicates the degree of risk of leakage without portraying the leakage as simply an ever-present characteristic of the Slide–Loc bags." The district court's statement is sufficiently specific when read in the context of both the January 7 and April 6 opinions. The district court has made plain that, if Clorox wants to portray water leakage from Slide–Loc bags, it must portray the rate of leakage accurately and indicate that only a certain percentage of bags leak, even when subjected to an extreme water "torture" test.

Clorox argues that the April 6, 2000 Order "does not 'describe in reasonable detail' the conduct it seeks to restrain, and offers Clorox no clear guidance on what it may and may not depict in future Glad–Lock advertising." Clorox further claims that it "has no way of knowing whether it can show water leaking from a Slide–Loc bag and, if so, what rate of leakage it can depict."

Clorox's arguments are unavailing. Rule 65(d) does not require the district court to "predict exactly what [Clorox] 'will think of next'" or to describe all possible, permissible future commercials that Clorox may produce involving Ziploc Slide–Loc storage bags. *Sterling Drug, Inc. v. Bayer AG,* 14 F.3d 733, 748 (2d Cir.1994). As this court has held before, the district court can do no more to assist Clorox in determining whether a proposed advertisement conveys a message that is literally false with regard to a depiction of Ziploc Slide–Loc bags. *See American Home Prods. Corp. v. Johnson & Johnson,* 577 F.2d 160, 171 (2d Cir.1978).

The district court's April 6, 2000 Order is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." Clorox cannot disseminate the Goldfish II advertisements. The district court clearly stated that these advertisements were literally false because they do not accurately indicate the risk of leakage from Ziploc Slide Loc storage bags, and accordingly the district court enjoined their use. Clorox is therefore on notice that other advertisements that similarly fail to accurately depict the risk of leakage from Ziploc Slide–Loc storage bags will violate section 43(a) of the Lanham Act under the district court's injunction. This Order is hardly so broad as to be considered a mere obey-the-law order of the sort that this court has condemned in the past. *See, e.g., Sterling Drug,* 14 F.3d at 748–49. We therefore conclude that the April 6, 2000 permanent injunction conforms to the requirements of Rule 65(d)

## CONCLUSION

We affirm the judgment of the district court.