**MYLAN PHARMACEUTICALS, INC., Plaintiff,**

v.

**PROCTER & GAMBLE CO., Defendant.**

**No. 03 Civ. 10150(PKC).**

United States District Court, S.D. New York.

Feb. 21, 2006.

Steven G. Brody, Keith E. Sharkin, King & Spalding L.L.P., New York City, for Plaintiff.

Bruce S. Meyer, Weil, Gotshal & Manges LLP, Harold Paul Weinberger, Kramer, Jonathan Mark Wagner, Levin, Naftalis & Frankel, LLP, James W. Quinn, Weil, Gotshal & Manges LLP, New York City, for Defendant.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

This is a Lanham Act action brought by Mylan Pharmaceuticals Inc. ("Mylan") against The Procter & Gamble Company ("P & G") asserting that P & G's now-discontinued advertisements for Prilosec OTC were false or misleading. In 1989, the Food and Drug Administration ("FDA") approved the sale of prescription omeprazole as a drug to treat, among other specifically identified conditions, gastroesophageal reflux disease ("GERD"). Non-party Astra Zeneca PLC ("AZ") marketed the product under the brand name "Prilosec". With FDA approval, plaintiff Mylan now manufactures and markets a generic version of prescription omeprazole. As described below, defendant P & G, having first obtained a license from AZ, received FDA approval to market an over-the-counter version of omeprazole under the name "Prilosec OTC". Mylan alleges that P & G's advertising statements falsely claim that (1) Prilosec OTC "is the same drug product as" prescription omeprazole and (2) Prilosec OTC "is approved for conditions as to which [prescription omeprazole] (but not Prilosec OTC) has been

proven safe and effective." (Complaint ¶ 3)

The parties' motions for summary judgment present issues that lie at the intersection of the authority of the FDA to approve drugs and their labeling under the Food, Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 331 *et seq.*, and the right of a competitor to seek redress for false or deceptive advertising under the Lanham Act, 15 U.S.C. § 1125(a). Defendant P & G seeks summary judgment in its favor dismissing the Lanham Act and related state law claims in their entirety. Plaintiff Mylan seeks partial summary judgment on its literal falsity claims. The factual record has been fully developed through discovery.

Viewed in their context, certain statements by P & G can be reasonably read to expressly claim that Prilosec OTC is the same product as prescription omeprazole. These statements are objectively verifiable and compare the two products. The advertising statements stand or fall on whether there are material differences between the two products. For the reasons discussed below, I conclude that there are genuine and material disputes of fact as to the falsity of statements arguably equating the two products and, therefore, deny summary judgment to both parties.

Mylan's claim of implied falsity stands on a different footing. It asserts that implicit in any claim that Prilosec OTC is the same as prescription omeprazole is an implied statement falsely asserting that P & G's product "is approved for conditions" for which prescription omeprazole has been approved. It is settled law that there is no private right of action under the FDCA for a claim that a product has been unlawfully promoted for a non-approved or off-label use. *See* p. 12 below. A consistent line of authority has foreclosed claims, regardless of legal theory, that a manufacturer or distributor has unlawfully promoted a product to treat a condition for which it has not been approved by the FDA. *See id.* Moreover, in view of the FDA approval of its labeling, there could be no viable claim that the name Prilosec OTC is inherently misleading because of its association with a branded version of omeprazole. But here, Mylan pursues a different theory. Mylan has come forward with a consumer survey supporting its claim that, by reason of P & G's statements of equivalence, consumers are confused into believing that the two products have been approved for treatment of the same conditions. I conclude that this theory is not foreclosed by the FDCA and, because there are disputed issues of material fact, may be presented to the jury.

*Facts*

For the purposes of these motions, I have accepted as true only those facts that have not been disputed. Where multiple inferences may be drawn from a fact, I have drawn only the inference most favorable to the non-movant.

This case centers on the marketing and advertisement of an over-the-counter pharmaceutical drug known as Prilosec OTC. The product label of Prilosec OTC states that it contains the sole active ingredient "Omeprazole magnesium" in a "delayed-release tablet 20.6 mg (equivalent to 20 mg omeprazole)." (Weinberger Decl. Ex. G; Pl. Resp. to Def. 56.1 ¶ 11). Omeprazole is a proton pump inhibitor, a drug that treats gastrointestinal conditions by shutting down acid pumps in the lining of the stomach. (Pl. Resp. to Def. 56.1 ¶ 1) The parties agree that omeprazole is generally more effective than older gastrointestinal treatments such as antacids, which simply neutralize the acid already produced in the stomach. (Katz Decl. ¶ 5; Pl. Resp. to Def. 56.1 ¶ 1) Both sides also subscribe to the view that omeprazole is more effective

than the so-called "H₂ antagonists" like Zantac or Tagamet, which interfere with the biological process that leads to the formation of acid. (Katz Decl. ¶ 5; Pl. Resp. to Def. 56.1 ¶ 1)

The FDA first approved omeprazole as a prescription product in 1989 to treat GERD, erosive esophagitis, duodenal ulcers, gastric ulcers, and pathological hypersecretory conditions. (Allgood Decl. ¶ 3; Pl. Resp. to Def. 56.1 ¶ 2) Until 2002, AZ was the exclusive provider of omeprazole in the world. (Pl. Resp. to Def. 56.1 ¶ 3) In the United States and certain other countries, AZ sold omeprazole under the name "Prilosec" in capsule form in dosages of 10 mg, 20 mg, and 40 mg, with the 20 mg dosage as the most commonly prescribed. (Pl. Resp. to Def. 56.1 ¶ 3) In other countries, AZ sold omeprazole under the name "Losec". (Pl. Resp. to Def. 56.1 ¶ 3)

In 1997, defendant P & G entered into a license agreement with AZ to distribute and sell an over-the-counter version of Prilosec to treat heartburn, subject to FDA approval of such a product. (Allgood Decl. ¶ 5; Pl. Resp. to Def. 56.1 ¶ 5) In January 2000, P & G and AZ jointly sought FDA approval for a tablet form of omeprazole, instead of a capsule form, because consumers preferred the tablet form and it was more resistant to tampering. (Allgood Decl. ¶ 5; Pl. Resp. to Def. 56.1 ¶¶ 5–6) P & G and AZ sought FDA approval of Prilosec OTC to treat a single condition, namely, frequent heartburn, which is a symptom of GERD; they did so because they believed that it was FDA policy to approve over-the-counter drugs only to treat symptoms that can be self-diagnosed. (Allgood Dep. at 55–56, 69; Pl. Resp. to Def. 56.1 ¶ 6) As a result, P & G and AZ did not seek approval of, and the FDA did not approve, Prilosec OTC for the other gastrointestinal conditions treated by the prescription version of Prilosec because patients suffering from those diseases should presumably first be examined by their physician. (Allgood Dep. at 55–56, 69; Pl. Resp. to Def. 56.1 ¶ 6)

The parties dispute whether Prilosec OTC can safely and effectively treat all of the conditions for which prescription omeprazole was approved. (Def. Resp. to Pl. 56.1 ¶¶ 9–10) The FDA noted at one point in time that Prilosec OTC was "an appropriate treatment for erosive esophagitis and Barrett's esophagus," although P & G concedes that the agency did not approve Prilosec OTC for these uses. (Brody Aff. Ex. 14; Weinberger Decl. Ex. I at 5; Pl. Resp. to Def. 56.1 ¶ 12) The FDA had approved prescription omeprazole to treat erosive esophagitis. (Allgood Decl. ¶ 3; Allgood Dep. at 55–56, 69; Pl. Resp. to Def. 56.1 ¶¶ 2, 6)

In November 2002, the FDA approved the first generic omeprazole prescription product. (Pl. Resp. to Def. 56.1 ¶ 15) On November 20, 2002, a generic drug manufacturer, Andrx Pharmaceuticals Corp. ("Andrx"), submitted a Citizen Petition to the FDA expressing its concerns about the pending review of defendant P & G's over-the-counter version of Prilosec. (Weinberger Decl., Ex. F at 1) Andrx argued, in part, that, unless defendant P & G used a product name that did not include "Prilosec", "it is completely foreseeable that consumers who are familiar with, or have used, prescription Prilosec will think that the OTC product can be used in the same manner and for the same purposes." (Weinberger Decl., Ex. F at 27) According to Andrx, such consumers could inappropriately "self-treat" serious health conditions other than frequent heartburn. (Weinberger Decl., Ex. F at 27) Mylan wrote two letters—one on September 12, 2003 and the other on December 11, 2003—in support of a similar Citizen Peti-

tion submitted by the law firm Mattingly, Stanger & Malur P.C. in August 2003. (Weinberger Decl., Exs. L, M; Pl. Resp. to Def. 56.1 ¶ 13) In light of its concerns about consumer confusion regarding the appropriate use of Prilosec OTC, Mylan argued that "any action short of changing the brand name constitutes false advertising of the product, which leads to further consumer confusion and inevitable misuse...." (Weinberger Decl., Ex. M at 4)

In June 2003, P & G obtained approval from the FDA to sell an over-the-counter version of omeprazole under the name "Prilosec OTC" in the form of 20 mg tablets. (Allgood Decl. ¶ 8; Weinberger Decl. Ex. E) Mylan began to sell its own generic omeprazole capsules in prescription form in August 2003. (Pl. Resp. to Def. 56.1 ¶ 15)

The approved product label for Prilosec OTC states that it may be used to treat "frequent heartburn," which it defines as heartburn that "occurs 2 or more days a week." (emphasis in original) (Weinberger Decl. Ex. G) The label warns prospective consumers that certain described symptoms "may be signs of a serious condition." (Weinberger Decl. Ex. G) Although the label notes that Prilosec OTC is "not intended for immediate relief of heartburn," it does not explicitly state that Prilosec OTC may not be used to treat conditions other than heartburn. (Weinberger Decl. Ex. G) P & G asserts that, whatever the FDA-approved "indications" or uses of Prilosec OTC, physicians may legally recommend Prilosec OTC to their patients for any use. (Allgood Decl. ¶ 9)

P & G launched Prilosec OTC in September 2003. (Allgood Decl. ¶ 10) P & G ran several advertisements on television and radio, some of which form the basis of this lawsuit. (Compl. ¶¶ 1, 17; Allgood Decl. ¶ 10; Pl. Resp. to Def. 56.1 ¶ 16) These advertisements usually contain lan-

guage indicating that Prilosec OTC is for "frequent heartburn sufferers." (Brody Aff., Exs. 1, 20–22) The challenged statements are described by P & G as "heritage" statements, meaning that they refer to antecedents to the product. Specifically, the advertisements contained the following claims:

- "One of the world's largest selling prescription medicines is now over the counter as Prilosec OTC."

- "One of the world's top-selling prescription drugs in its class now over the counter."

- "This was the world's # 1 selling prescription medicine. And now, it's over the counter right in your store."

- "In fact, the medicine in what was once the world's top selling prescription drug is now in Prilosec OTC."

- "In fact, the medicine in Prilosec OTC has been prescribed by doctors millions of times worldwide."

(Compl. ¶¶ 1, 17; Allgood Decl. ¶ 10; Pl. Resp. to Def. 56.1 ¶ 16) Plaintiff argues that these claims are "false in fundamental respects" and thus violate both federal and state law. (Pl. Mem. of Law at 1)

While this litigation was pending, the FDA denied the Citizen Petitions submitted by Andrx and the Mattingly law firm challenging P & G's labeling of Prilosec OTC. (Weinberger Decl., Exs. N, O; Pl. Resp. to Def. 56.1 ¶ 14) In a June 21, 2005 letter, Steven K. Galson, M.D., M.P.H., Acting Director of the FDA's Center for Drug Evaluation and Research, observed that reports of the use of the OTC product for prescription-labeled indications "represent[ed] a miniscule fraction of the number of units of Prilosec and Prilosec OTC sold and do not appear to represent a significant phenomenon." Dr. Galson's letter went on to state:

Like Prilosec OTC, a number of OTC products have the same active moiety and product name as their prescription counterpart with only a modifier, such as OTC, in their name—even though they have different indications. Examples of these products include Motrin AB, Zantac75, Pepcid AC, and Tagamet HB.... Prilosec and Prilosec OTC refer to products that contain the same active moiety, omeprazole, which is solely responsible for the products' identical pharmacological effect. Patients therefore are not at risk of being confused as to the pharma-cological effect of the two products.

(Weinberger Decl., Ex. O at 5, 7) P & G urges that the letter ruling from Dr. Galson controls, in substantial part, the outcome of this action. (Def. Mem. of Law at 8, 12–13)

*Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(e), Fed.R.Civ.P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law ..." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. *Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Rule 56(e), Fed.R.Civ.P. In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come for-ward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84 (2d Cir. 2004).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (quotations and citations omitted); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c), Fed. R.Civ.P. In the absence of any disputed material fact, summary judgment is appropriate. *Id.* When cross-motions for summary judgment are made, the standard is the same as that for an individual motion. *See Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir.2001).

*Discussion*

**I. The Lanham Act Claims**

Defendant P & G moves for summary judgment on plaintiff's claim of literal and

implied falsity in violation of the Lanham Act on the ground, among others, that the FDA has already decided that its packaging and labeling is neither false nor misleading in using the name "Prilosec OTC", a slight variation on the name of a branded version of prescription omeprazole, "Prilosec". (Def. Mem. of Law at 12–16) In essence, it argues that any claim that Prilosec OTC is the same as prescription omeprazole is foreclosed by the FDA approval of the drug product's packaging and labeling. Alternatively, it argues that its statements are truthful or, at least, not materially false. Plaintiff Mylan argues that an FDA ruling on drug labeling is not controlling under the Lanham Act and argues that P & G's advertising statements are false in claiming expressly that the two products are the same and in claiming impliedly that Prilosec OTC is approved for the same indications as prescription omeprazole. (Pl. Mem. of Law in Opp'n at 5)

"The Lanham Act makes actionable 'false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services.' " *Boule v. Hutton*, 328 F.3d 84, 90 (2d Cir.2003) (quoting *S.C. Johnson & Son. Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir.2001)). The Lanham Act, in relevant part, provides:

> Any person who, on or in connection with any goods or services … uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any … false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or

> > commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (2000).

█ To establish a false advertising claim under section 43(a) of the Lanham Act, the Plaintiff must demonstrate that the statement in the challenged advertisement is false. "Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers." *S.C. Johnson & Son*, 241 F.3d at 238. " 'The Lanham Act does not prohibit false statements generally. It prohibits only false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services.' " *Id.* (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir.1995)). The Second Circuit has urged that, in considering a false advertising claim under the Lanham Act, it is "fundamental to any task of interpretation … that text must yield to context." *Id.* (citations omitted). The meaning of an advertisement may present an issue of fact. *Id.* at 237 (citing *Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 384 (2d Cir. 1986)).

█ "Where … a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged commercials tend to mislead or confuse consumers." *Johnson & Johnson * Merck Consumer Pharm. Co. v. Smith-*

*kline Beecham Corp.,* 960 F.2d 294, 297 (2d Cir.1992). The Second Circuit has noted that "the success of a plaintiff's implied falsity claim usually turns on the persuasiveness of a consumer survey." *Id.* at 298. To survive a motion for summary judgment on this element of its implied falsity claim, plaintiff need only come forward with evidence from which a reasonable jury could conclude that the challenged statements in defendant's advertising created a likelihood of consumer confusion. *Cf. New Sensor Corp. v. CE Distrib. L.L.C.,* 303 F.Supp.2d 304, 316–17 (E.D.N.Y.2004), *aff'd,* 121 Fed.Appx. 407 (2004) (collecting cases granting cases granting summary judgment in the absence of such evidence).

In the context of pharmaceutical drugs, courts have generally rejected Lanham Act claims based on advertisements that merely repeat labeling information that has been approved by the FDA. *See, e.g., Cytyc Corp. v. Neuromedical Sys., Inc.,* 12 F.Supp.2d 296, 301 (S.D.N.Y.1998) (granting motion to dismiss because "representations ... that comport substantively with statements approved as accurate by the FDA cannot supply the basis for [Lanham Act] claims"); *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson–Merck Consumer Pharm. Co., Inc.,* 1996 WL 280810, *13 (S.D.N.Y. May 24, 1996) (denying injunction against defendant for advertising claims based on FDA-approved packaging and labeling). However, courts have permitted Lanham Act claims to proceed when they are based on advertisements asserting information not approved for labeling or packaging. *See, e.g., Alpharma, Inc. v. Pennfield Oil Co.,* 411 F.3d 934, 939 (8th Cir.2005) (reversing dismissal of Lanham Act claims arising out of advertising allegedly communicating that defendant's product had received FDA approval for certain uses when no such approval existed). *Cf. Cott-*

*rell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1255–56 (10th Cir.1999) (refusing to dismiss Lanham Act claims based on advertising statements that the EPA had approved defendant's products). Indeed, courts have noted that the Federal Trade Commission, not the FDA, directly regulates the advertising of OTC drugs. *See, e.g., Sandoz Pharm. Corp. v. Richardson–Vicks, Inc.,* 902 F.2d 222, 227 (3d Cir. 1990); *Bristol–Myers Co. v. FTC,* 738 F.2d 554, 559–60 (2d Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 960, 83 L.Ed.2d 966 (1985).

The FDCA prohibits the promotion of approved drugs for non-approved or off-label uses. 21 U.S.C. § 331(d). But courts have rejected attempts, including under the Lanham Act, to create a private cause of action to challenge a manufacturer or distributor's sale of an FDA approved drug for off-label use. *See, e.g., PDK Labs v. Friedlander,* 103 F.3d 1105, 1113 (2d Cir.1997) ("[N]o such private right of action exists."); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1139 (4th Cir. 1993), *cert. denied sub nom., Am. Home Products Corp. v. Mylan Labs., Inc.,* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994) (dismissing for failure to state a claim plaintiff's "ingenious" attempt to "use the Lanham Act as a vehicle by which to enforce the" FDCA). *See also* 21 U.S.C. § 337(a) (restricting enforcement of FDCA to suits by the United States).

Plaintiff argues that the statements challenged in this case are literally false in several respects and go beyond the statements approved by the FDA for labeling purposes. First, plaintiff argues that the advertisements state that Prilosec OTC was the world's top-selling prescription medicine. (Pl. Mem. of Law at 9; Brody Aff., Exs. 18–27). Plaintiff contends that this is false because Prilosec OTC was never a prescription medicine. (Pl. Mem.

of Law at 9) Second, the advertisements allegedly state that prescription omeprazole is now available over the counter as Prilosec OTC (Pl. Mem. of Law at 9; Brody Aff., Exs. 18–27), and plaintiff asserts that prescription omeprazole is not available over the counter and remains available only by prescription. (Pl. Mem. of Law at 9) Finally, plaintiff argues that the advertisements at issue state that Prilosec OTC "was" prescription omeprazole, but the two drug products have several relevant differences. (Pl. Mem. of Law at 9).

■ After carefully reviewing the advertising statements at issue and the context in which they were made, I conclude that a reasonable jury could find that three statements are literally false. Specifically, these statements are as follows:

- "One of the world's largest selling prescription medicines is now over the counter as Prilosec OTC."
- "One of the world's top-selling prescription drugs in its class now over the counter."
- "This was the world's # 1 selling prescription medicine. And now, it's over the counter right in your store."

(Compl. ¶¶ 1, 17; Allgood Decl. ¶ 10; Pl. Resp. to Def. 56.1 ¶ 16) [1]

A reasonable jury could conclude that statements that Prilosec OTC and prescription omeprazole are identical are literally false, given the evidence of differences between the two. The two products have different formulations; prescription omeprazole does not contain any magnesium, although the "base omeprazole" chemical compound is the only active ingredient in both products. (Kulick Dep. at 76–77, 95;

Jacoby Report at 2) Prescription omeprazole is available as a capsule; Prilosec OTC is sold as a tablet. (Levine Dep. at 59) Finally, defendant concedes that the two drug products are not bioequivalent. (Allgood Dep. at 63)

Mylan also argues that P & G's advertisements falsely imply that Prilosec OTC has been approved for the same conditions as prescription omeprazole. Prilosec OTC is indicated for the treatment of frequent heartburn; in contrast, prescription omeprazole is indicated for duodenal ulcers, gastric ulcers, GERD, erosive esophagitis and pathological hypersecretory conditions. (Kulick Dep. at 102, 125; Brody Aff. Exs. 11, 13) In fact, P & G's advertisements do not speak to the specifics of those indications for which Prilosec OTC has sought or received FDA approval. The advertisements are addressed to those who suffer from frequent heartburn, which is an approved indication for Prilosec OTC.

■ On its implied falsity claim, plaintiff has come forward with an affidavit of an expert witness who conducted a consumer survey seeking to test the impact of defendant's advertising for Prilosec OTC. (Jacoby Report ¶ 5) In conducting this survey, plaintiff's expert showed actual television and print advertisements for Prilosec OTC to survey participants, and the advertisements in the record use one or several of the statements at issue in this case. (Jacoby Report ¶ 5) Plaintiff's expert concluded that more than two-thirds of respondents were misled in one of two ways—they were led to believe that Prilosec OTC and prescription omeprazole were the same

---

**1.** There are other statements that assert that the medicine in the two products is the same: "In fact, the medicine in what was once the world's top selling prescription drug is now in Prilosec OTC." (Compl. ¶¶ 1, 17; Allgood Decl. ¶ 10; Pl. Resp. to Def. 56.1 ¶ 16) As discussed above, the meaning of a statement is a question of fact and since I have allowed statements that the two products are the same to go to the jury, I will also allow these same-medicine-type statements to be presented to the jury.

drug product, or that the two drug products had been approved for the same indications. (Jacoby Report ¶ 71) This percentage of consumer confusion based on a consumer survey is more than other courts have required in concluding that a substantial number of consumers were misled by the challenged advertisements. *See, e.g., Johnson & Johnson–Merck Consumer Pharm. Co. v. Rhone–Poulenc Rorer Pharm., Inc.,* 19 F.3d 125, 134 n. 14 (3d Cir.1994) (citing cases finding "deception rates" of 20% or more to be sufficient); *McNeil–PPC, Inc. v. Pfizer Inc.,* 351 F.Supp.2d 226, 249 (S.D.N.Y.2005) (same). In addition, plaintiff has provided this Court with documents obtained from defendant during discovery that detail voluminous complaints from consumers who specifically addressed the implied claim in defendant's advertising that Prilosec OTC and prescription omeprazole are the same drug product. (Brody Aff., Exs. 14–16)

Though it arose in the context of a Rule 12(b)(6) motion, the Fourth Circuit ruling in *Mylan Labs.,* 7 F.3d at 1130, is instructive. There, the plaintiff sought to base a Lanham Act claim on allegations that a competitor had falsely asserted that its drug had been properly ap-claim on allegations that a competitor had falsely asserted that its drug had been properly approved by the FDA and, secondly, that its drug was bioequivalent to plaintiff's. Because the plaintiff's first claim turned on whether the FDA's approval was proper, the Court concluded that it was foreclosed by the FDCA. *Id.* at 1139. However, the Court held that the second claim relating to a false assertion of bioequivalence was not foreclosed and could proceed under the Lanham Act, even though bioequivalence or "AB" rating would have been a status approved by the FDA. *Id.* at 1138. Put another way, although the FDA approvals were directly implicated by the Lanham Act claim, the claim was not foreclosed as

a matter of law. The claim in this case, though an implied falsity claim, is analogous to the bioequivalency claim before the Fourth Circuit.

To survive a motion for summary judgment on this element of its implied falsity claim, plaintiff need only come forward with evidence from which a reasonable jury could conclude that the challenged statements in defendant's advertising created a likelihood of consumer confusion. *Cf. New Sensor Corp. v. CE Distrib. L.L.C.,* 303 F.Supp.2d 304, 316–17 (E.D.N.Y.2004), *aff'd,* 121 Fed.Appx. 407 (2004) (collecting cases granting summary judgment in the absence of such evidence). Here, I only conclude that the implied falsity claim may be presented to the jury.

Finally, P & G argues that any variations between its advertising and the truth are not sufficiently material to be actionable under the Lanham Act. (Def. Mem. of Law at 22) P & G concedes that the two drugs are not bioequivalent. (Allgood Dep. at 63) Instead, it argues that the two drugs are similarly bioavailable, meaning that they achieve approximately the same concentrations in the bloodstream. (Allgood Dep. at 63)

"In addition to proving falsity, the [Lanham Act] plaintiff must also show that the defendants misrepresented an 'inherent quality or characteristic' of the product. This requirement is essentially one of materiality, a term explicitly used in other circuits." *S.C. Johnson & Son,* 241 F.3d at 238. Drawing on precedent in other circuits, the Second Circuit has explained that satisfying this materiality requirement depends on whether the alleged inaccuracy in the statements at issue would influence the purchasing decisions of consumers. *See NBA v. Motorola, Inc.,* 105 F.3d 841, 855 (2d Cir.1997) (affirming dismissal of Lanham Act false advertising

claim on the ground that any distinction about the origin of defendant's game information would not affect potential consumers because defendant's service was the only one of its kind). The plaintiff does not need to demonstrate that the defendant's representations actually affected consumer behavior, but rather only that they were likely to have done so. *Compare Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311–12 (1st Cir.2002), *cert. denied*, 537 U.S. 1001, 123 S.Ct. 485, 154 L.Ed.2d 396 (2002) (reversing grant of summary judgment to defendants because plaintiffs had come forward with evidence of likelihood that defendants' representations about the cashmere content of their sweaters affected consumer behavior) *with Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1250–51 (11th Cir.2002) (vacating preliminary injunction against defendant due to lack of evidence that defendant's references in advertising to "eye doctor" rather than "eye care practitioner" could have had any effect on consumer behavior).

Plaintiff has come forward with evidence from which a reasonable jury could conclude that defendant's statements, if proven either literally false or false by implication, would likely have influenced consumers' purchasing decisions. It is undisputed that defendant markets Prilosec OTC as a tablet rather than the capsule form of prescription omeprazole, and Mylan directs this Court to the affidavit submitted by a P & G employee that consumers prefer the tablet form over the capsule. (Allgood Decl. ¶ 5; Pl. Resp. to Def. 56.1 ¶¶ 3, 5–6) In addition, it is undisputed that the FDA has approved the two drug products to treat different indications. (Def. Resp. to Pl. 56.1 ¶¶ 11, 13, 14)

On this motion, this Court cannot determine, as a matter of law, the importance of the characteristics distinguishing prescription omeprazole and Prilosec OTC. Of course, the conclusion that a reasonable jury could find material falsity does not exclude the possibility that a reasonable jury could conclude that the statements are not false in a material respect. It simply means that a trial is required to resolve the issue.

## II. *State Claims*

Plaintiff has also asserted claims based on state law for deceptive business practices, false advertising and unfair competition, and both parties have moved for summary judgment on these claims. Both sides have asserted that the elements of these state law claims are "substantially the same" (Def. Mem. of Law at 24) or "essentially the same" (Pl. Mem. of Law in Opp'n at 21) as the Lanham Act claims. For this reason, neither side has separately briefed the elements of these state law claims. Because the elements of the state law appear to substantially overlap with the Lanham Act claims and are factually intertwined with them, I will deny the parties' motions for summary judgment on these claims.

## *Conclusion*

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is denied.

SO ORDERED.